347 So.2d 964 (1977)
CITIZENS NATIONAL BANK
v.
FIRST NATIONAL BANK.
No. 49338.
Supreme Court of Mississippi.
June 1, 1977.
Rehearing Denied July 20, 1977.
*965 Watkins, Pyle, Ludlam, Winter & Stennis, L. Arnold Pyle, David W. Mockbee, Jackson, for appellant.
Watkins & Eager, Thomas H. Watkins, William F. Goodman, Jr., Jackson, for appellee.
Before INZER, SUGG and LEE, JJ.
INZER, Presiding Justice, for the Court:
This is an appeal by Citizens National Bank from a decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi, sustaining a general demurrer to its bill of complaint exhibited against First National Bank and dismissing the bill of complaint after appellant refused to plead further.
*966 This suit was originally filed in the Circuit Court of Hinds County and was transferred to Chancery Court upon motion of the defendant. After the transfer, the pleadings were reformed and the bill of complaint in this case charged that one Charles Duran was a majority stockholder and controlled seven business corporations and that during February, March and the first part of April, Duran and the Duran companies maintained checking accounts at Citizens National Bank and during March and part of April 1974, Duran and several of the Duran companies maintained checking accounts at First National Bank.
It was then alleged that in February, 1974, Duran and the Duran companies commenced the practice of kiting checks between checking accounts at Citizens National Bank and checking accounts at First National Bank by drawing checks on such accounts in excess of the balances therein due, with such excessive withdrawals being covered by checks drawn on other accounts of Duran or Duran companies in excess of the balances therein. The volume of such kited checks and kited deposits flowing between Citizens National Bank and First National Bank increased dramatically during February and March 1974 to reach a total of approximately $700,000 during the last week of March and the first week of April 1974.
It was charged that sometime during the last week of March or the first week of April 1974, First National Bank discovered the existence of the kiting among Duran and Duran Company accounts in Citizens National Bank and First National Bank; that First National Bank did not immediately notify Citizens National Bank of the existence of the kiting, but instead, First National Bank commenced on about the first of April, 1974, to return unpaid substantially all checks drawn against Duran and the Duran Company accounts at First National Bank, deposited in Duran and Duran Company accounts at Citizens National Bank, and presented for payment by Citizens National Bank to First National Bank through the daily collection process; that payment was refused on these checks whether or not sufficient funds existed in the accounts to pay the items. It was further charged that at the same time, First National Bank continued to accept deposits by Duran and Duran companies to accounts at First National Bank of checks drawn on accounts of Duran and Duran companies at Citizens National Bank which were paid by Citizens National Bank. First National Bank accumulated funds in the accounts of Duran and Duran companies with the intent to apply those collected funds to debts of Duran and companies at First National Bank, notwithstanding the fact that the funds were owned by Citizens National Bank and had wrongfully been obtained from Citizens National Bank by false pretense, conversion, or misappropriation due to the unlawful check kiting.
The bill of complaint further charged that First National Bank commenced to exercise its purported right of setoff to apply to the above described collected balances in the accounts of Duran and Duran companies to a number of debt obligations of Duran and Duran companies which were owing to First National Bank, but were not then due.
It was charged that through this combination of dishonored checks drawn against the collected balance presented for payment by Citizens National Bank and purporting to set off collected balances acquired through false pretenses from Citizens National Bank, wrongfully and unlawfully converted and appropriated monies belonging to Citizens National Bank in the amount of approximately $500,000.
The prayer of the bill of complaint was for a judgment of $500,000 against First National Bank or in the alternative the return of all funds belonging to the complainant unlawfully appropriated by First National Bank and for punitive damages.
First National Bank interposed a general demurrer to the bill of complaint and in sustaining the demurrer the chancellor in a memorandum opinion stated:
Citizens National Bank has filed a bill of complaint against First National Bank *967 of Jackson alleging that FNB discovered a "check kiting" being carried out by Duran and that as a result then stopped honoring checks to CNB and continued to accept payment for checks from CNB and therefore covered its own losses in the "check kiting" scheme, all to the detriment and damage of CNB.
I have carefully examined the bill of complaint, upon the filing of a demurrer by FNB, and I fail to find where CNB charged FNB with doing anything illegal or wrongful and in fact I cannot find where FNB has been charged with doing anything other than acting as a prudent and careful bank should act. It must therefore follow that the demurrer must be sustained. The complainant may have thirty days in which to amend should it so desire.
On appeal Citizens National Bank argues that the chancellor was in error in sustaining the demurrer for several reasons. However, these contentions are based upon the premise that upon discovery of the check kiting on the part of Duran, there was a duty on the part of First National Bank to immediately notify Citizens National Bank and that the funds collected after the discovery by First National Bank on checks drawn on Citizens National Bank still belonged to Citizens National Bank. Consequently, the first question to be determined is whether First National Bank had a legal duty to notify Citizens National Bank that it was convinced that Duran was kiting checks. So far as the allegations in the bill of complaint are concerned, these two banks were competitors in the banking field and ordinarily banks deal with each other at arm's length. The bill does not allege any circumstances or facts that tend to show that a confidential or fiduciary relationship existed between these two banks, neither does it show that there is any requirement in the banking field that one bank notify another of its discovery of a customer kiting checks. In the absence of a fiduciary or confidential relationship, or some other legal duty, First National Bank had no duty to inform Citizens National Bank that Duran was kiting checks. This being true, we are of the opinion that First National Bank had the legal right to continue to accept for deposit checks drawn by Duran on accounts at Citizens National Bank and present those checks for payment. At the same time, First National Bank had the legal right to refuse to pay checks drawn by Duran on accounts in First National Bank and deposited in Citizens National Bank.
The next question to be determined is whether the funds obtained by First National Bank on checks drawn by Duran on accounts in Citizens National Bank and deposited in accounts of Duran in First National Bank still belong to Citizens National Bank or were funds that Citizens National Bank could require First National Bank to return to it. Under the terms of the Uniform Commercial Code, Citizens National Bank was a payor bank and the provisions of the Code provide that when the checks in question were presented to Citizens National Bank it was required to either pay the checks or return them by the midnight deadline as provided by Mississippi Code Annotated section 75-4-104(1)(h) (1972). Citizens National Bank chose to pay the checks by a clearing house settlement. Evidently, at that time Duran either had sufficient funds in the accounts to pay the checks, or Citizens National Bank chose to let him overdraw. While it may be true that the balance in the account may have been increased by giving Duran credit for deposits made by checks drawn on accounts in First National Bank, such credits were only provisional and Citizens National Bank was not obligated to pay the checks until it was satisfied that the other checks were paid. In other words, Citizens National Bank was the collecting agent of Duran on the checks drawn on First National Bank and as such it could have refused to credit Duran's account until the checks cleared. When checks drawn by Duran were presented by First National Bank, Citizens National Bank could have (1) refused to pay the checks, (2) pay the checks on credit of Duran and look for him to pay the overdraft, should one occur, or (3) Citizens National *968 Bank could have waived the conditions created for its own protection and made the conditional deposit absolute and paid the checks upon the credit of Duran and the checks theretofore deposited but not yet collected. This would have created a new contract between Citizens National Bank and Duran superseding the previous conditional credit contract. Thus when Citizens National Bank paid these checks, either Duran had sufficient funds in the account to cover the checks or Citizens National Bank chose to extend him credit. Under these circumstances Citizens National Bank no longer owned the funds and First National Bank could not be guilty of conversion of funds belonging to Citizens National Bank.
While Citizens National Bank contends that there was a duty on the part of First National Bank to inform Citizens National Bank of its knowledge relative to check kiting by Duran, it does not charge that it did not know of this fact or had it known, it would not have cashed the checks. Neither does it charge that First National Bank in any way conspired with Duran or consented to his check kiting. While Citizens National Bank does not contend that First National Bank did not have the right to refuse to accept and return the checks drawn on it by Duran on accounts in First National Bank and deposited in Citizens National Bank, it does contend that because of First National Bank's knowledge that Duran was kiting checks, that the funds received by First National Bank and later applied to Duran's debt were subject to a constructive trust in its favor. This theory, as is the theory of restitution, is based upon the proposition and the assumption that Citizens National Bank was the owner of the check proceeds and First National Bank was under the duty to return the property or compensate the rightful owner.
It is also a well settled rule that unless the payment of a check is induced by fraud or misrepresentation on the part of the holder, such payment closes the transaction insofar as the bank and the holder of the check are concerned and the bank cannot recover back the amount paid. This is true even though the payment creates an overdraft of the account of the maker. There are at least three valid reasons for this rule. First and foremost, to permit a bank to repudiate the payment of a check would destroy the certainty that must pertain to commercial transactions of this nature and would cause uncertainty, delay and annoyance if a bank at some future time could call on the payee for the return of the money paid to him on the check. Secondly, there is no privity between the payee or holder of the check and the drawee bank. Finally, the drawee bank always has the means of knowing the status of the depositor's account and is not required to pay the check unless it is satisfied the depositor has sufficient funds to cover the check or they are willing to allow him to overdraw his account. 9 C.J.S. Banks and Banking § 354a, p. 722 (1938); First National Bank v. Deposit Guaranty Bank & Trust Co., 247 Miss. 765, 156 So.2d 814 (1963).
It is now, and has been for a long time, the law in this State that the relationship between a bank and its depositors is one of debtor and creditor. Since it is a debtor-creditor relationship, the giving of a check by a depositor does not constitute an assignment of the funds on deposit. The bank may refuse to pay the check, although the depositor has sufficient funds to his credit to cover the check and the holder of the check has no cause of action against the bank. The holder of the check must look to the drawer of the check and only the drawer of the check can complain about the bank not honoring the check. In this case only Duran can complain of First National Bank refusing to pay the checks that he had drawn on accounts in First National Bank and deposited in accounts at Citizens National Bank. Likewise, only Duran could complain relative to First National Bank's applying the funds on deposit to the payment of his debts. As the holder of the checks presented to Citizens National Bank by First National Bank all that First National Bank warranted was that (1) it had *969 good title to the checks, and (2) that it had no knowledge that the signature of the drawer was unauthorized. Miss. Code Ann. § 75-4-207 (1972). This being true, there was no breach of the warranty in this case.
Citizens National Bank also contends that it is entitled to recover in this case because of fraud practiced upon it by First National Bank. This contention brings into focus the question of whether the bill of complaint charges sufficient facts to charge fraud. While it is true the demurrer admits all facts well pleaded and all reasonable inferences that may be drawn from the facts, it does not admit conclusions not based on facts. It is true that the bill of complaint does make the charge that after First National Bank discovered the check kiting that it failed to notify Citizens National Bank of that fact and from this allegation it might be inferred that there was such a duty, but this inference is only a conclusion on the part of the pleader since no facts are alleged to show from whence this duty comes or arises. Neither is it charged that First National Bank made any representations to Citizens National Bank or in any way wrongfully induced Citizens National Bank to pay the checks drawn by Duran on accounts in Citizens National Bank. After a careful study of the bill of complaint, we are of the opinion that it does not charge sufficient facts to show fraud.
After a review of this case, we find ourselves in agreement with the chancellor that the bill of complaint does not charge First National Bank with doing anything illegal and that First National Bank had a legal right to do the things it did for its own protection. For this reason this case should be and is affirmed.
AFFIRMED.
PATTERSON, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
GILLESPIE, C.J., took no part.