**MID–CAL NATIONAL BANK, a National Banking Association, Plaintiff and Appellee,**

v.

**FEDERAL RESERVE BANK OF SAN FRANCISCO, Defendant,**

**Bank of Stockton, Defendant and Appellant.**

No. 76–3116.

United States Court of Appeals, Ninth Circuit.

Jan. 8, 1979.

Mark S. Bray (argued), of Cavalero, Bray, Shumway & Geiger, Stockton, Cal., for defendant and appellant.

E. James McGuire (argued), O'Gara & McGuire, San Francisco, Cal., for plaintiff and appellee.

Before TRASK and KENNEDY, Circuit Judges, and TURRENTINE,* District Judge.

TURRENTINE, District Judge:

Bank of Stockton (hereinafter "Stockton") appeals from a summary judgment entered against it. This case presents the question whether one bank owes a legal duty to another bank to discover a check kiting scheme that results in a loss to the second bank. The court below apparently determined that no such duty was owed by appellee Mid-Cal National Bank (hereinafter "Mid-Cal") to Stockton. We affirm.

The essential facts are as follows. Mid-Cal and Stockton were used by certain individuals in their perpetration of a check kiting scheme. In a kite, accounts are maintained in different banks and checks are drawn on one account and deposited in the other when neither account has any substantial funds in it to pay the checks drawn on it. Since it takes several days to collect a check, each account will show significant credits of uncollected checks, and those credits will persist as long as checks are drawn daily in each bank and deposited in the other. The kite collapses when one bank refuses to pay checks drawn against the uncollected funds. Normally the first bank to discover the kite can relieve itself of loss. *See* Blakely & Pomerantz, Anatomy of the Check Kite, 151 Bankers' Magazine 90 (Summer, 1968).

The kite began around 1971. Both banks utilized computers for the purpose of detecting such schemes, and diligent inspection of the printouts would most likely have disclosed the kite to each. But neither bank seemed terribly concerned that it was a dupe in the kiters' plot. Not until September, 1975 did the kite collapse, when Mid-Cal dishonored and returned checks to Stockton. Stockton was left to bear a loss of over $900,000.

Mid-Cal filed a complaint for a preliminary injunction and declaratory relief. It sought to enjoin the Federal Reserve Bank from processing certain checks returned to it by Stockton; to obtain a declaration that certain of the kiters' checks were not properly returned to Mid-Cal; to obtain a declaration that certain checks were properly returned to Stockton; and to be awarded damages. Stockton counterclaimed to recover its loss, alleging that Mid-Cal was negligent because it failed to refer to information in its possession that would have disclosed existence of the scheme.

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

There can be negligence only if the allegedly negligent party breached a legal duty owed to another. Appellant has not cited, and the court has not found, support for Stockton's assertion that Mid-Cal owed it a duty to discover the kite. Since this question is one of first impression in this court and has not been decided by the California courts, we turn to an analysis of whether Mid-Cal owed a duty to discover the kite.

As the California Supreme Court stated in *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 434, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976), "legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." The California legislature has determined that a person who undertakes an activity owes a duty to others to exercise ordinary care or skill. Cal.Civ.Code § 1714 (West 1973). But one who merely fails to act to protect another is generally not liable for breaching a duty unless there is a special relationship between them giving rise to a duty to act. *Tarasoff, supra,* 17 Cal.3d at 435, 131 Cal. Rptr. 14, 551 P.2d 334; *Weirum v. RKO General, Inc.,* 15 Cal.3d 40, 49, 123 Cal.Rptr. 468, 539 P.2d 36 (1975); Restatement (Second) of Torts § 314 (1965). In order to extend liability for "nonfeasance," "it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act." Prosser, Law of Torts 339 (4th ed. 1971).

Thus, the first inquiry is whether Mid-Cal's failure to discover the kite was active or passive. Stockton argues that the misfeasance-nonfeasance dichotomy has been nearly obliterated in California. However, the very cases it cites belie this assertion. *E. g., Tarasoff, supra,* 17 Cal.3d at 434–35, 131 Cal.Rptr. 14, 551 P.2d 334. Stockton then contends that the failure to discover was active, not passive, Mid-Cal having permitted the kiters to maintain their accounts and having accepted their checks. This argument is at odds, however, with the counterclaim, which alleges that Mid-Cal "negligently failed to refer to information. . . ." This is a clear allegation of inaction, not of action.

Stockton also argues that Mid-Cal owed it a duty to discover the kite by virtue of a special relationship between the banks and between Mid-Cal and the kiters. Appellant offers no support for finding that special relationship between banks, and we conclude that there was no such relationship.' Special relationships have been found where social policy dictates that one be held responsible to come to the aid of another. Thus, for example, a carrier must aid an endangered passenger, an innkeeper must aid his imperiled guest, and an employer must do the same for his injured employee. Prosser, *supra,* at 341–42. The relationship between these banks contains none of the qualities that lead courts and commentators to find parties legally blameworthy for failing to help another. No fiduciary or confidential nature to their relationship was alleged; they related at arm's length. Stockton was in no need of protection from Mid-Cal; it had computers and other means available to it to detect the kite, and was thus as able to protect itself from loss. To determine that in such a situation Mid-Cal owed a duty to discover the kite would be to alter radically the nature of banking and the general conduct of business. Such an alteration is neither necessary nor warranted.

We likewise conclude that Mid-Cal did not have a special relationship with its depositors such that the bank had a duty to control their conduct for the benefit of Stockton. Appellant's sole authority, the Uniform Commercial Code, does not create such a relationship. Further, the cases in which a duty of care has been grounded on a special relationship due to control over a third party generally concern the ability of the controller to protect the third party from *physical* harm by the controlled person. Prosser, *supra,* at 348–50. *See also* Restatement (Second) of Torts § 315. Appellant has offered no compelling reason to extend the responsibilities of control to the present situation.

Our decision is supported by the one case that presents a situation similar to the instant one. In *Citizens National Bank v. First National Bank,* 347 So.2d 964 (Miss. 1977), plaintiff bank charged that defendant bank, which had discovered the existence of a kiting scheme, did not immediately notify plaintiff of it. Defendant's ensuing dishonoring of checks and exercising of a purported right of set-off allegedly constituted conversion of plaintiff's funds. The court decided preliminarily that defendant had no duty to inform plaintiff of the kiting. The court reasoned:

So far as the allegations in the bill of complaint are concerned, these two banks were competitors in the banking field and ordinarily banks deal with each other at arm's length. The bill does not allege any circumstances or facts that tend to show that a confidential or fiduciary relationship existed between these two banks, neither does it show that there is any requirement in the banking field that one bank notify another of its discovery of a customer kiting checks. In the absence of a fiduciary or confidential relationship, or some other legal duty, First National Bank had no duty to inform Citizens National Bank that Duran was kiting checks. This being true, we are of the opinion that First National Bank had the legal right to continue to accept for deposit checks drawn by Duran on accounts at Citizens National Bank and present those checks for payment. At the same time, First National Bank had the legal right to refuse to pay checks drawn by Duran on accounts in First National Bank and deposited in Citizens National Bank.

347 So.2d at 967.

The Mississippi Supreme Court decided the question whether one bank had a duty to notify another bank that a kite was in progress, not whether there was a duty to *discover* the kite. But if a bank in such a situation cannot be held liable for failing to notify even when it knows of kiting activity, a bank should not be called to account for failing to discover information that, in any event, it was not required to convey.

It appears that the only duty of a bank in this regard is to stop a kite after it has been discovered. *See* 6 Zollman, Banks & Banking 187 (1936).

There being no special relationship in this case, Mid-Cal did not owe a duty to discover the kite. Accordingly, summary judgment was properly entered for appellee.

KENNEDY, Circuit Judge, dissenting:

In *Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978) the California Supreme Court held that it was negligence for a bank to permit a hotel's checks on which it was named as payee to be deposited in the personal account of the hotel's bookkeeper, who was an embezzler. The negligence was misfeasance, as contrasted with nonfeasance, and in reliance on that distinction the court held the bank owed a duty of reasonable care to the hotel to discover the employee's lack of authority to deposit the funds in her personal account. *See id.* at 692–96, 148 Cal.Rptr. at 344–46, 582 P.2d at 935–37. The *Sun 'n Sand* decision is of controlling importance in interpreting Stockton's counterclaim, and under its principles the counterclaim might be interpreted, or properly amended, to allege actionable misfeasance on the part of Mid-Cal Bank.

The majority holds in the case before us that Stockton's theory of recovery must necessarily rest upon nonfeasance. While recognizing the difficulties of the misfeasance/nonfeasance distinction, I think the counterclaim can be interpreted to allege the negligent performance of active conduct, which should be characterized as misfeasance. It is undisputed that both banks accepted checks by the perpetrator of the scheme, and it was so alleged in the counterclaim. The negligent failure by the bank to discover the kiting, I concede, is an omission and nonfeasance, but it is necessary to evaluate also the bank's acts after the negligent failure to discover. *See Sun 'n Sand, supra,* at 693, 148 Cal.Rptr. at 344, 582 P.2d at 935. Under the theory of the complaint before us, as was also the

case in *Sun 'n Sand,* the act of omission was followed by negligent acceptance of the checks. *Sun 'n Sand* characterized this as misfeasance and active negligence, notwithstanding that it was the earlier omission that made the act of accepting the checks unreasonable.

The allegation of Stockton's counterclaim is that Mid-Cal "negligently failed to refer to information which it had in its possession which would have disclosed the existence of said kiting scheme." I agree that this is an inartful way to allege active conduct on the part of Mid-Cal. Nevertheless, "the Federal Rules of Civil Procedure were designed, and should be interpreted and applied, to do away with this kind of technicality," *Dunn v. TWA,* 589 F.2d 408 (9th Cir. 1978), and we should remember that a "complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of the claim." *United States v. Howell,* 318 F.2d 162, 166 (9th Cir. 1963), *quoting Dotschay v. National Mutual Insurance Co.,* 246 F.2d 221, 223 (5th Cir. 1957). We should be particularly careful to follow this rule where the Supreme Court of the state whose law is applicable to the proceeding has rendered a controlling decision after the complaint was drafted.

Admittedly, the existence or not of the nonfeasance doctrine in California and the presence or absence of a special relationship between Mid-Cal and Stockton appear to have received more attention at the trial court level than whether the counterclaim alleged misfeasance and if so whether it stated a claim upon which relief could be granted. On the other hand, the district court and Mid-Cal were aware that Stockton was proceeding on the theory of misfeasance, at least in the alternative. I do not think the counterclaim as drafted should prevent Stockton from arguing that Mid-Cal's conduct was misfeasance of the kind held actionable in *Sun 'n Sand,* and from seeking leave to amend to state that theory with specificity. *Cf.* Fed.R.Civ.P. 15(b).

The question before us is somewhat obscure because the evidence supporting the claim of active negligence is essentially identical to that supporting a theory of passive negligence. That, however, is simply because misfeasance and nonfeasance both may spring from the same facts. I would remand the case to the district court so that Stockton has the opportunity to prove that active negligence is a substantial cause of its injury and that Mid-Cal owed it a duty of due care to avoid engaging in such conduct. It appears to be Stockton's theory that Mid-Cal continued to accept the checks after a subordinate notified a Mid-Cal branch officer of irregularities in the subject accounts disclosed by a computer analysis, irregularities that justified further investigation. It should be open to the appellant by way of further pleadings and discovery, to develop a theory upon which it could at least argue that Mid-Cal's conduct in this case was below the minimum standard of care which controls the conduct owed by one bank to another. Therefore, although the views of the majority are well stated, I respectfully dissent from the judgment.