**NORWEST BANK BLACK HILLS, N.A., Plaintiff and Appellant,**

v.

**RAPID CITY TEACHERS FEDERAL CREDIT UNION (NO. 4122), Defendant and Appellee.**

**No. 16007.**

Supreme Court of South Dakota.

Argued April 26, 1988.

Reassigned Oct. 14, 1988.

Decided Dec. 14, 1988.

Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellant.

Lonnie R. Braun of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

MILLER, Justice (on reassignment).

In this appeal we hold that the trial court erred in granting a motion to dismiss for failure to state a claim and in converting a motion to dismiss into a motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

Because of the nature of this holding, a detailed recitation of the facts is not necessary. Generally stated, Norwest Bank (Norwest) commenced an action against the Rapid City Teachers Federal Credit Union (Credit Union) seeking both actual and exemplary damages. Norwest, in a two-count complaint, alleged (1) that Credit Union, through its officers and agents, knowingly participated in a check-kiting scheme with John W. and Nancy Ashley, d/b/a A–1 Used Car Sales and Rentals, and that such conduct was fraudulent and oppressive; and (2) that Credit Union was guilty of negligence in the supervision, management and control of its manager, who is alleged to have knowingly participated in the check-kiting scheme.

In its answer, Credit Union made a general denial and affirmatively alleged that Norwest failed to state a claim, was guilty of contributory negligence greater than slight, assumed the risk and failed to join indispensable parties.

Credit Union then filed a motion to dismiss, claiming that Norwest's pleadings failed to allege a breach of any duty owed to it by Credit Union. In response to this motion, Norwest's counsel asked the court to consider selected depositions. The court presumably decided to convert the motion to dismiss into one for summary judgment, since its judgment granted both the motion to dismiss and summary judgment,[1] even

---

1. Here we are dealing with an anomalous order. One paragraph dismisses plaintiff's complaint and the next grants summary judgment. After the complaint is dismissed, what is left to grant

though the court gave no notice to either party of its decision to convert. This appeal followed.

## DECISION

**1. *The trial court improperly converted the motion to dismiss to one for summary judgment.***

■ Under SDCL 15–6–12(b)(5), where one moves to dismiss for failure to state a claim and "matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in § 15–6–56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by § 15–6–56*." SDCL 15–6–12(b). (Emphasis added.)

There is nothing in this record[2] which reflects that the trial court advised or notified the parties of its intent to convert the motion to dismiss into one for summary judgment. We have clearly stated that such notice is mandatory. *Schaub By Schaub v. Moerke*, 338 N.W.2d 109 (S.D. 1983); *Olson v. Molko*, 86 S.D. 365, 195 N.W.2d 812 (1972).

Obviously, the "reasonable opportunity" language in SDCL 15–6–12(b) is designed to prevent unfair surprise to the parties. *Dayco Corporation v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975). As stated by Wright and Miller:

It is important that the court give the parties notice of the changed status of the motion and a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' In this way no one will be taken by surprise by the conversion. Once the proceeding becomes one for summary judgment, the moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.

5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969) (footnotes omitted).

The trial court, having failed to follow these mandatory steps, erred in converting the motion to dismiss into one for summary judgment.

**2. *The trial court erred in granting the motion to dismiss.***

■ That part of the trial court's judgment which adjudged that Norwest's complaint failed to state a cause of action, recited, in salient part:

In considering the Complaint, (Norwest) has failed to produce any authority assessing civil liability against an entity in the position of the Credit Union which was incurring losses as a result of the activities of Mr. Ashley to a banking institution which also allegedly suffered losses. Therefore, to that extent, the Court finds and concludes that (Norwest's) Complaint fails to state a claim.

The trial court seems to overlook the fact that Norwest has not claimed that Credit Union owed it a duty to discover Ashley's check-kiting scheme or that Credit Union breached any duty of good faith under the Uniform Commercial Code. Rather, Norwest relies on the general law on liability for torts found at SDCL 20–9–1 which states:

Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.

SDCL 15–6–8(a) sets forth the mandatory minimum requirements for a pleading seeking a claim for relief. That section merely requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although Norwest's complaint does not allege an abundance of facts, and certainly could be improved upon, the allegations meet the basic requirements of SDCL 15–

---

summary judgment against? This appears to be an "overkill."

**2.** There is no transcript of the hearing nor any written memorandum decision by the trial court.

6–8(a). Obviously, Credit Union did not find the allegations insufficient for the purpose of making a responsive pleading and made no request for a more definite statement as authorized by SDCL 15–6–12(e).

If we are to assume that all of the allegations in the complaint are true (as we must for the purposes of the motion to dismiss, *Akron Savings Bank v. Charlson*, 83 S.D. 251, 158 N.W.2d 523 (1968)), plaintiff would be entitled to recover. In other words, in Count I, if Norwest can establish that Credit Union "knowingly participated" in a check-kiting scheme *and* that Credit Union's conduct was "oppressive and fraudulent," Norwest is entitled to recover. *Akron, supra.* Similarly, regarding Count II, if Norwest can prove that Credit Union's manager "knowingly participated" with Ashleys in the check-kiting scheme *and* that Credit Union was "guilty of negligence in the supervision, management, and control" of its officer, proximately causing detriment, Norwest may recover, assuming that Credit Union had a duty to Norwest. *Akron,* supra.

■■■ Under SDCL 15–6–8(a) it is not necessary to plead "duty" in negligence cases where the existence of a duty may be logically inferred from the claim stated in one's complaint. *See, e.g., Christensen v. Shelby County*, 287 N.W.2d 560 (Iowa 1980); *see also Johnson v. Weyerhaeuser Co.*, 189 F.Supp. 735 (D.C.Or.1960) (where the court ruled on Oregon's version of Rule 8(a); 2A Moore's Federal Practice ¶ 8.13 (1987); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 (1969). This is an issue to be addressed by the parties and the court after the facts have been developed. (Here the record contains only the pleadings and the lengthy deposition of Credit Union's former manager.) Of course, "duty" is seldom, if ever, an issue in a fraud case and it is certainly not a necessary element to be pleaded in those cases. *See* SDCL 20–10–2, 15–6–8(c) and 15–6–9(b); *see also Littau v. Midwest Commodities, Inc.*, 316 N.W.2d 639 (S.D. 1982).

The trial court therefore erred in granting the motion to dismiss.

REVERSED.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

ERICKSON, Circuit Judge, concurs in part and dissents in part.

ERICKSON, Circuit Judge, sitting for HENDERSON, J., disqualified.

ERICKSON, Circuit Judge (concurring in part and dissenting in part).

I concur with that portion of the majority opinion which concludes that the trial court erred by failing to give the parties notice of its intention to treat the motion to dismiss as one for summary judgment. While it was the actions of Norwest that triggered the conversion of the motion to that of summary judgment and they can hardly claim surprise, it is the better practice to give all parties notice of the change of status. A motion for summary judgment goes to the merits of the case and the granting of that motion "operates to merge or bar the cause of action for the purposes of res judicata." Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d § 2712. Additionally, once the motion becomes one for summary judgment, the burden changes. All parties should be given the opportunity to present additional pertinent evidence in order that the court's decision is based upon a comprehensive record.

In my opinion, the judgment of the trial court concerning the motion to dismiss should be affirmed.

This action concerns an alleged check-kiting scheme principally operated by John Ashley, a depositor and customer of the Credit Union, Norwest, as well as several other financial institutions. When the practice was halted by the actions of the Credit Union, Norwest was left with $50,000 in checks drawn upon insufficient funds.

Norwest sued the Credit Union charging that the Credit Union was actively involved in the "check-kiting" scheme. Count I alleges a "participation theory," wherein it is

alleged that the Credit Union "knowingly participated in the check-kiting." Count II alleges a "negligent supervision theory," wherein it is alleged that the Credit Union did not adequately monitor and supervise its employee/manager, one Michael Geier.

"Check-kiting" is the practice of opening one or more accounts in several banks and "checks are drawn on one account and deposited in the other when neither account has any substantial funds." *Mid–Cal National Bank v. Federal Reserve Bank,* 590 F.2d 761, 762, (C.A.9 1979). Taking advantage of the delay in the check collection process, checks are exchanged daily between these accounts, which continually shows credits of "uncollected funds." The kite will collapse when one of the banks refuses to honor a check drawn upon "uncollected funds." The bank first stopping the kite usually suffers the least loss.

Generally, banks allow customers to write checks on funds posted to their accounts which have not been finally paid by the bank upon which those funds were drawn. These are known as "uncollected funds." The process of collecting those funds generally takes a couple of days. *Town & Country State Bank v. First State Bank,* 358 N.W.2d 387, 390 (Minn. 1984). There is a fine line between the illegal act of "check-kiting" and the legal act of writing checks upon "uncollected funds."

Norwest complains that the trial court erred in granting Credit Union's motion to dismiss for failure to state a claim upon which relief can be granted. SDCL 15–6–12(b)(5). The motion is an attack upon the sufficiency of the pleadings.

This court has previously set forth the standards to be used in determining whether or not a Rule 12(b)(5) motion should be granted. Those standards are:

1. The complaint is to be construed in the light most favorable to the pleading party.
2. Facts, *well plead,* and not merely conclusions may be accepted as true and doubts are to be resolved in favor of the pleader.
3. Pleadings should not be dismissed merely because the court entertains

doubts as to whether the pleader will prevail in the action.

4. Rules of procedure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful pleadings.

*Janklow v. Viking Press,* 378 N.W.2d 875 (S.D.1985).

Under modern pleadings, and particularly SDCL 15–6–8(a)(1), a pleading "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." This statute mirrors Rule 8(a)(2) of the Federal Rules of Civil Procedure. The objective of this statutes is to "avoid technicalities," while "giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; . . . ." Wright & Miller, Federal Practice and Procedure: § 1215. It is implicit that what is contemplated is a "statement of circumstances, occurrences, and events in support of the claim being presented." *Wright & Miller, supra.*

The first inquiry is what facts, well pled, are stated in the complaint which put the defendant on notice as to the claim and grounds upon which it rests?

Examining Count I, Norwest claims:

1. . . . Ashley . . . has a checking account with Norwest, Credit Union, and three other financial institutions.
2. Credit Union, through it's officers and agents, knowingly participated in a check-kiting scheme with . . . Ashley. . . .
3. That as a result of the participation of defendant in said check-kiting scheme, the plaintiff has incurred financial loss and damage in the amount of Fifty Thousand Dollars ($50,000.00).
4. That the conduct of the defendant amounted to oppressive and fraudulent conduct within the meaning of SDCL 21–3–2, entitling the plaintiff to exemplary damages.

In Count II, Norwest claims:

1. . . . Ashley . . . has a checking account with Norwest, Credit Union, and three other financial institutions.

2. ... Michael Geyer (Geier), an employee of the defendant, knowingly participated with said Ashley ... in a check-kiting scheme.

3. ... Defendant was guilty of negligence in the supervision, management and control of said employee, Mike Geyer, which negligence proximately caused damage to this plaintiff in the amount of Fifty Thousand Dollars ($50,000.00).

It is critical to the entire analysis of Norwest's cause of action that Norwest admits that financial institutions do not generally owe a duty to other financial institutions to discover and disclose check-kiting schemes. Norwest provided the court with an extensive analysis of existing case law in this area and agreed that since competing financial institutions deal at arms length; have their own means of detecting check-kiting; and need no protection from one another; there is no duty between competing institutions. *Mid–Cal, supra,* at 763. The exceptions to this general rule are as follows:

1. Where some special relationship has been established, either by a fiduciary or confidential relationship.

2. Where there was a contractual relationship.

3. There is a duty created by law. *Mid–Cal, supra,* at 763.

4. There exists actual misrepresentation or fraud.

*Citizens National Bank v. First National Bank,* 347 So.2d 964 (Miss.1977).

Norwest argues that a duty is created by SDCL 20–8–1. That statute mandates that "every person is responsible for injury to the ... property ... of another caused by his willful acts or caused by his want of ordinary care of skill." The majority accepts this argument. In regard to Count I, the majority concludes that "if Norwest can establish the Credit Union 'knowingly participated' in a check-kiting scheme *and* that Credit Union's conduct was 'oppressive and fraudulent,' Norwest is entitled to recover."

In the first instance, the "well-pled facts" which Norwest relies upon are contained in the phrase "knowingly partici-pated." Since for the purpose of this motion we do not look behind the pleadings, but rely solely upon the "well-pled facts" within the pleadings, we are stuck with determining what the term "knowingly participated" means. This court does not have to accept every allegation as true, but rather only the "well-pled facts." In this instance, given the peculiar nature of check-kiting schemes and more importantly, the general rule that no duty exists between competing financial institutions to disclose such schemes, it is my conclusion that the phrase "knowingly participated" is nothing more than a sweeping legal conclusion cast in the form of a factual allegation.

The majority places some emphasis on the fact that the Credit Union did not request a more definite statement, and it filed an answer. There is nothing in the rules of procedure that require a defendant to correct the flaws of the plaintiff. One might more reasonably ask why Norwest chose to fight the motion to dismiss, rather than amending its pleadings? Those are questions of tactics, which are facts outside the pleadings and need not be considered.

Additionally, in regard to Count I, plaintiff alleges that the Credit Union's conduct was "oppressive and fraudulent." These pleadings then run afoul of the mandate set forth in SDCL 15–6–9(b) which requires that "all averments of fraud ... shall be stated with particularity."

Count II is an action in negligence. "There can be negligence only if the allegedly negligent party breached a legal duty owed to another." *Mid–Cal, supra,* at 763. *Small v. McKennan Hospital,* 403 N.W.2d 410 (S.D.1987). Here, as in Count I, Norwest's dilemma is to create an actionable duty and corresponding liability where they admit none previously existed. While arguing that liability should attach in this instance, Norwest is trying to carve out a careful exception to the general rule, which it embraces, rather than opposes. The reason for this tactic is obvious. While Norwest wants its $50,000.00 in this instance, it would rather not be sued in the next instance when being more diligent than its competitor, Norwest exposes the check-kiting scheme first and the loss belongs to its competitor.

In essence, in Count II, Norwest is asking that the duty to control the conduct of a third person to prevent him from doing physical harm to another be extended to that of harm to property (or monetary harm.) This same request was addressed and found wanting in *Mid–Cal, supra,* at 763. Norwest has not offered a compelling reason to create or extend a duty in this situation. It is interesting that Norwest did not ask this court to ignore the reasoning of other jurisdictions and, in this case of first instance in South Dakota, determine that there is a duty to disclose check-kiting schemes as soon as they are discovered. The reason is obvious. To continually permit one financial institution to sue another each time a check is dishonored because there are accompanying signs of "check-kiting" would seem to cause uncertainty, delay and total confusion in commercial transactions. It would change the entire banking industry, and even Norwest does not want that remedy.

As to Count II, I would affirm the trial court's decision. As to Count I, I would affirm the trial court's decision, but remand and allow the plaintiff to be given an opportunity to amend his complaint to set forth ultimate facts which support the conclusion that Credit Union "knowingly participated" in this check-kiting scheme.