1996 SD 11

**Oakley EIDE, Plaintiff and Appellant,**

v.

**E.I. DU PONT DE NEMOURS & CO., a Delaware Corporation, and Dakota Pride Cooperative f/k/a Farmers Cooperative Oil Association of Winner d/b/a Burke Farmers Elevator, Defendants and Appellees.**

**No. 19101.**

Supreme Court of South Dakota.

Submitted on Briefs Oct. 19, 1995.

Decided Jan. 31, 1996.

---

Michael L. Buffington of Samp and Merkle, Sioux Falls, for plaintiff and appellant.

Jack Gunvordahl, Burke, for appellee Du Pont.

Lon J. Kouri and Martin Oyos of May, Johnson, Doyle & Becker, P.C., Sioux Falls, for appellee Dakota Pride Cooperative.

KONENKAMP, Justice.

[¶ 1] The circuit court's failure to give the parties notice of its intent to convert a motion to dismiss into a summary judgment motion was error. Accordingly, we reverse and remand.

### Facts

[¶ 2] Eide, a Gregory County farmer, sued Du Pont De Nemours & Co. and Dakota Pride Cooperative for damages sustained to his corn crop, allegedly caused by Du Pont's Accent herbicide. After purchasing the product from Dakota Pride in June 1991, Eide applied it to approximately 160 acres of cropland. He contends the herbicide stunted the growth of the corn, resulting in a substantially lower yield.

[¶ 3] Eide brought suit on four theories: (1) products liability; (2) negligence; (3) breach of express warranty; and (4) breach of implied warranty. Du Pont moved to dismiss pursuant to SDCL 15–6–12(b)(5), contending Eide's complaint failed to state a claim upon which relief could be granted and that federal law preempted Eide's claims. Dakota Pride joined Du Pont's motion. After oral argument the circuit court allowed the parties to submit briefs on the motion to dismiss and later issued a Memorandum Decision and Order granting summary judgment in favor of Du Pont and Dakota Pride on the basis of federal preemption. The court never notified the parties of its intent to convert the motion to dismiss into one for summary judgment. Eide appeals questioning whether a motion to dismiss may be converted to a motion for summary judgment without notice.

### Analysis

### [¶ 4] I.  Conversion of Motion to Dismiss

[¶ 5] If a court intends to treat a motion to dismiss as one for summary judgment, it must advise the parties of such intent. *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 764 (S.D.1989); *Norwest Bank Black Hills, N.A. v. Rapid City Teachers Federal Credit Union*, 433 N.W.2d 560, 562 (S.D.1988). In *Norwest Bank* we stated:

> Under SDCL 15–6–12(b)(5), where one moves to dismiss for failure to state a claim and "matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in § 15–6–56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by § 15–6–56.*" SDCL 15–6–12(b).

433 N.W.2d at 562. Notice is mandatory. *Id.*; *Schaub By Schaub v. Moerke*, 338 N.W.2d 109 (S.D.1983). The "reasonable opportunity" language in SDCL 15–6–12(b) prevents unfair surprise. *Norwest Bank*, 433 N.W.2d at 562. Eide was not afforded an

opportunity to submit affidavits or other evidence which may have controverted the court's decision that no genuine issue of material fact existed. *Jensen Ranch,* 440 N.W.2d at 764. This ruling was error and we remand. *Id.; Norwest Bank,* 433 N.W.2d at 562. Du Pont and Dakota Pride argue, alternatively, that the error was harmless. For the reasons given below, we conclude otherwise.

### [¶ 6] II. Preemption in the Federal Insecticide Fungicide and Rodenticide Act (FIFRA).

■ [¶ 7] In its decision granting summary judgment the court's ruling swept over Eide's arguments that part of his case survived federal preemption. In fairness to the circuit court, Eide concedes his pleadings were inartfully drawn. Yet upon careful dissection we conclude a portion of Eide's claims persist apart from FIFRA. Pleadings should not be dismissed for failure to state a claim merely because a court entertains doubts on whether the pleader will prevail in the action. *Janklow v. Viking Press,* 378 N.W.2d 875, 877 (S.D.1985). Moreover, "[t]he court must go beyond the allegations for relief and 'examine the complaint to determine if the allegations provide for relief on any possible theory.'" *Schlosser v. Norwest Bank N.A.,* 506 N.W.2d 416, 418 (S.D.1993)(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1357 (1971)).

■ [¶ 8] For purposes of reviewing a motion made pursuant to SDCL 15–6–12(b)(5), the complaint must be construed in a light most favorable to the pleading party and facts well pled may be accepted as true, with doubts resolved in favor of the pleader. *Johnson v. Kreiser's, Inc.,* 433 N.W.2d 225, 226 (S.D.1988); *Janklow,* 378 N.W.2d at 877. In determining whether to grant a motion under SDCL 15–6–12(b)(5), the court considers the complaint's allegations and any exhibits which are attached and accepts the pleader's description of what happened along with any conclusions which may be reasonably drawn therefrom. *Schlosser,* 506 N.W.2d at 418. A dismissal motion may be directed to the whole complaint or only specified counts contained in it. *Id.* The motion is disfavored and should be rarely granted. *Id.*

[¶ 9] FIFRA preemption has been analyzed by a number of federal courts.[1] Our review will be limited to those cases decided after the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), where the Court reviewed the preemptive scope of the Federal Cigarette Labeling and Advertising Act of 1965 and the Public Health Cigarette Smoking Act of 1969. Both laws interpreted labeling requirements similar to those in FIFRA. FIFRA specifically mandates, "[a] State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b) (Supp 1993).

[¶ 10] "The phrase no 'requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* 505 U.S. at 521, 112 S.Ct. at 2620. Courts applying the *Cipollone* rationale have routinely held FIFRA preempts state common law claims on improper labeling and failure to warn. *See King v. E.I. DuPont De Nemours & Co.,* 996 F.2d 1346 (1st Cir.1993), *cert dismissed,* —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993); *MacDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir.1994); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364 (7th Cir.1993); *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177 (10th Cir.1993), *cert denied,* —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993), *cert denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

---

1. FIFRA provides a detailed scheme for regulating the content and format of labels for herbicides, and it requires all herbicides sold in the United States to be registered with the EPA. *See King v. E.I. DuPont De Nemours & Co.,* 996 F.2d 1346 (1st Cir.1993); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993)(discussing the details of FIFRA labeling requirements).

[¶ 11] The *Cipollone* Court cautioned, however, that § 5(b) will not preempt all common law claims. *Cipollone*, 505 U.S. at 523, 112 S.Ct. at 2621. The Court noted, for example, that the statute did not preempt state law obligations to avoid marketing a product with a manufacturing defect or with a design defect. *Id.* This rationale was applied by the Fifth Circuit in deciphering a similar FIFRA provision:

> [N]ot all common law is preempted by FIFRA—§ 136v(b) does not preempt common law that is unconcerned with herbicide labeling, nor does it preempt those state laws concerned with herbicide labeling that do not impose any requirement "in addition to or different from" the FIFRA requirements. Thus, we conclude, in accord with the clear language of the statute, that § 136v(b) preempts only those state laws that impose or effect different or additional labeling requirements.

*MacDonald*, 27 F.3d at 1024 (citations omitted)(footnote omitted). *See also Worm*, 5 F.3d at 749 (state law claims for negligent testing, formulation and manufacture not preempted by FIFRA).

The Eighth Circuit interpreted a comparable preemption provision in the Medical Devices Amendments Act and borrowed the FIFRA analysis applied by the Fourth Circuit:

> We agree with the conclusions of the *Worm* and *Moss* [*v. Parks Corp.*, 985 F.2d 736 (4th Cir.1993)] courts and of the district courts cited above that when a statute only preempts state requirements that are different from or in addition to those imposed by federal law, plaintiffs may still recover under state tort law when defendants fail to comply with the federal requirements.

*National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 993 (8th Cir.1994). *See also Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887 (8th Cir.1994)(FIFRA preempts state tort law for failure to comply with federal labeling requirements but holding limited to inadequate labeling or failure to warn claims).

█ [¶ 13] Eide's claims premised upon inadequate warning or labeling are preempted by FIFRA; his allegations of defective design, manufacture and production are not preempted and should not be dismissed.[2] *See Schlosser*, 506 N.W.2d at 417–19. We reverse and remand for further proceedings consistent with this opinion.

[¶ 14] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

---

2. Eide's complaint states in part:

That said Accent [herbicide] was defective in its design for purposes of band application to corn crops, and said Accent was defective in its production at the time it left Du Pont's factory.

That Du Pont negligently caused said Accent to leave its factories in this defective condition.

That Plaintiff's damages are directly and proximately caused by Du Pont's negligence in designing said Accent.

That Plaintiff's damages are directly and proximately caused by Du Pont's negligence in producing and manufacturing said Accent.