Ennis State Bank v. Heritage Bank
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00226-CV

     ENNIS STATE BANK,
                                                                              Appellant
     v.

     HERITAGE BANK,
                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 55369
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Ennis State Bank brought suit against Heritage Bank for negligence and bad faith in
returning a check to Ennis drawn on an account at Heritage for insufficient funds. The account
on which the check was drawn was being used in a kite. The trial court rendered judgment for
Heritage, and Ennis appeals. We affirm.
Background
      Gary Stephenson induced several businessmen to open bank accounts at various banks to
engage in the buying and selling of cattle. Stephenson used those accounts in a kite. A kite is
a scheme in which a person maintains accounts at several banks and deposits checks in each
bank drawn against non-existent funds in the others. When checks in this scheme were
presented to Heritage for payment, Heritage would require cashier’s checks to be deposited to
cover the presented checks. Ennis and another bank, First National Bank of Ennis, would
issue the cashier’s checks, generally with insufficient funds. When First National refused to
issue any more cashier’s checks, the kite collapsed. As in the game of musical chairs, Ennis
was left without a chair. It was the bank left with a check for over $230,000 which was
returned, unpaid, by Heritage.
Duties of the Banks
      In its first and second issues, Ennis contends that Heritage owed Ennis a duty of good faith
under the UCC and a general duty of care to stop the check kiting scheme.
      Texas courts have not addressed either issue. But other courts have; and those decisions
are instrumental in our resolution of Ennis’s first two issues. 
Is There a General Duty of Care?
      Generally, one bank does not have any duty to discover a check kite. See Citizens
National Bank v. First National Bank, 347 So.2d 964 (Miss. 1977). In Citizens, the
Mississippi Supreme Court held that absent any fiduciary or confidential relationship or some
other legal duty, one bank had no duty to inform the other that a customer was kiting checks. 
Id. at 967. Taking this concept another step further, the Ninth Circuit court, relying on
Citizens, determined that if a bank is not liable for failing to notify another bank of kiting
activity even when it knows of the activity, the bank should not be called to account for failing
to discover information that, in any event, it was not required to convey. Mid-Cal Nat’l Bank
v. Federal Reserve Bank, 590 F.2d 761, 764 (9th Cir. 1979). There being no special duty
between the banks, the court held that one did not owe the other a duty to discover the kite. 
Id. This is especially true where the other bank is in just as good a position to discover the
kite. Alta Vista State Bank v. Kobliska, 897 F.2d 930, 934 (8th Cir. 1990). Thus, absent
some special relationship or other legal duty, if there is no duty between banks to discover a
kite and no duty to warn of a kite once discovered, a bank has no duty to stop a kite it had no
duty to discover.
Some Other Legal Duty?
      Ennis has neither alleged nor argued that it and Heritage had any kind of fiduciary or
confidential relationship. It has argued, however, that the Uniform Commercial Code creates
a legal duty between the banks to act in good faith. Thus, the logical extension of this
argument is because Heritage had a legal duty to act in good faith, Heritage owed Ennis a duty
to stop the kite.
      Ennis relies on former section 1.203 of the Uniform Commercial Code to provide a legal
duty of good faith between the banks. See Act of 1967, 60th Leg., ch. 785, §1 (amended
2003)(current version at Tex. Bus. & Com. Code § 1.203 (Vernon Supp. 2004)).


 That
section provided, “Every contract or duty within this title imposes an obligation of good faith
in its performance or enforcement.” Id. (emphasis added). The principle involved is that in
commercial transactions, good faith is required in the performance or enforcement of all
agreements, that is, contracts, or duties. Id. at Uniform Commercial Code Comment. Former
section 1.203 does not support an independent cause of action for failure to perform or enforce
in good faith. Id. It does not create a duty where none previously existed. Rather, the section
means that a failure to perform or enforce, in good faith, a specific duty or obligation under a
contract, constitutes a breach of that contract or makes unavailable under the particular
circumstances, a remedial right or power. Id. There is no separate duty which can be
independently breached. Id. There has to be some contract or duty under the Code for the
obligation of good faith to arise.
      And as specifically regarding any kind of duty to detect or warn of a check kiting scheme,
courts have held there is no good faith duty under the UCC to do so. See Frost Nat’l Bank v.
Midwest Autohaus, 241 F.3d 862, 871-874 (7th Cir. 2001); First Nat’l Bank v. Colonial Bank,
898 F. Supp. 1220, 1229-1233 (N.D. Ill. 1995).
      Contract or Duty?
      Ennis does not argue that there was a contract between the parties. So, is there a duty in
this situation under the Code which would impose an obligation of good faith?
      Ennis argues that sections 4.301(a)(1) and 4.302(a)(1) provide the necessary legal duty to
invoke the good faith obligation. Section 4.301 provides:
If payor bank settles for a demand item... before midnight of the banking day of
receipt, the payor bank may revoke the settlement and recover the settlement if,
before it has made final payment and before its midnight deadline, it: (1) returns the
item....

Tex. Bus. & Com. Code Ann. § 4.301(a)(1) (Vernon 2002). To “settle” means to pay in
cash, by clearinghouse settlement, in a charge or credit or by remittance, or otherwise as
agreed. Id. § 4.104(11). “Midnight deadline” means midnight on the next banking day
following the banking day on which the bank receives the relevant item.... Id. at (10). Section
4.302 provides:
(a) If an item is presented to and received by a payor bank, the bank is accountable
for the amount of:
(1) a demand item...if the bank... retains the item beyond midnight of the banking day
of receipt without settling for it or...does not pay or return the item or send notice of
dishonor until after its midnight deadline....

Tex. Bus. & Com. Code Ann. § 4.302(a)(1) (Vernon 2002) (emphasis added). According to
this section, the bank is accountable if it retains the item beyond midnight of the banking day
of receipt without settling for it. Id. at Uniform Commercial Code Comment 1. Accountable
means that the payor bank is strictly liable for the amount of the check. First Nat’l Bank v.
Colonial Bank, 898 F. Supp. 1220, 1226 (N.D. Ill. 1995). The bank may avoid accountability
either by settling for the item on the day of receipt and returning it before the bank’s midnight
deadline or by returning the item on the day of receipt. Tex. Bus. & Com. Code Ann. §
4.302(a)(1), Uniform Commercial Code Comment 1, (Vernon 2002).
      Ennis acknowledges, and Heritage does not dispute, that Heritage settled for the check and
timely returned the check. Thus, section 4.302(a)(1)’s accountability provision does not apply. 
And under a plain reading of section 4.301(a)(1), a bank has no obligation or duty to return a
check. It has the ability to return a check; it may return a check. See Tex. Bus. & Com.
Code Ann. § 4.301(a)(1) (Vernon 2002). Therefore, there is nothing in these two sections
that, under the facts presented, would impose a duty of good faith on Heritage to stop the kite.
Application
      Because the sections relied on by Ennis do not impose a good faith obligation by Heritage
under the UCC, there is no legal duty that would impose any kind of general duty of care for
Heritage to stop the check kite. Thus, the trial court did not err in failing to find a good faith
duty or a general duty of care. Ennis’s first two issues are overruled.
Remaining Issues
      Ennis’s remaining two issues are premised on the resolution of its first two issues in its
favor. We have resolved those issues against Ennis. Therefore, we need not decide its
remaining issues.
Conclusion
      The judgment of the trial court is affirmed.
 
 
                                                                   TOM GRAY
                                                                   Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



(Justice Vance dissents with the following notation: 
I would find a duty to warn of ongoing illegal activity. 
As the majority does not, I respectfully dissent.)
Affirmed
Opinion delivered and filed May 12, 2004
[CV06]



n>                                                                         TOM GRAY
                                                                         Justice
Dissenting and concurring opinion delivered and filed August 15, 2001
Publish