Ward A. SEELEY, Appellant,

v.

BROTHERHOOD OF PAINTERS, DECO-RATORS AND PAPER HANGERS OF AMERICA et al., Appellees.

No. 19287.

United States Court of Appeals Fifth Circuit.

Aug. 31, 1962.

Rehearing Denied Oct. 11, 1962.

John W. Cooper, C. V. Stelzenmuller, Birmingham, Ala., Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., of counsel, for appellant.

Jerome A. Cooper, Birmingham, Ala., Herbert Thatcher, Washington, D. C., Cooper, Mitch & Crawford, Birmingham, Ala., for Union appellees.

George Peach Taylor, Dominick, Fletcher, Taylor & Yeilding, Birming-

ham, Ala., for appellees, Wiscombe Painting Co. and Wiscombe Southern Painting Co.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment dismissing an action for failure of the complaint to state a claim upon which relief might be granted or, in the alternative, of which the district court has jurisdiction.

According to the complaint, plaintiff was employed by Wiscombe Painting Company, Inc. (hereinafter called "Wiscombe") in 1951 at which time he was an active member of the Brotherhood of Painters, Decorators and Paper Hangers of America, a labor organization within the meaning of the Labor Management Relations Act. He became General Superintendent of Field Operations for Wiscombe in December, 1955, and was then issued a withdrawal card by said Brotherhood. The complaint alleges that, "Plaintiff has been an inactive member of said Union subsequent to said date."

In February 1958, the stockholders of Wiscombe organized and incorporated Wiscombe Southern Painting Company, Inc. (hereinafter called "Wiscombe Southern"), and plaintiff was transferred to Wiscombe Southern as Vice President and later became General Manager. He acted at all times under the direction and control of one Leland M. Wiscombe, the President of both Wiscombe and Wiscombe Southern.

The first labor difficulties encountered by Wiscombe Southern were at Tullahoma, Tennessee, with Local 456 of the Brotherhood. The negotiations were handled on behalf of Wiscombe Southern ostensibly by plaintiff but under explicit and detailed instructions from Leland M. Wiscombe.

In May 1958, Wiscombe and Wiscombe Southern "as a joint-venture of the two corporations" contracted for painting on the Jackson Lock and Dam on the War-

rior River at Coffeeville, Alabama. Work started on said joint-venture in July 1959. Arrangements for labor were made through Local 779 of the Brotherhood.

Shortly after beginning work on the joint-venture, Wiscombe and Wiscombe Southern experienced labor difficulties in securing labor for the joint-venture and on August 26, 1959, they filed a suit, signed and sworn to by plaintiff, against the defendant Brotherhood of Painters, Decorators and Paper Hangers of America Local Union No. 779, Dulaney Parker, its business agent, and others, in the Circuit Court of Choctaw County in Equity, praying for an injunction and damages against said defendants by reason of said labor difficulties caused by them. In addition to said bill for injunction and damages, in October 1959 three charges were filed with the National Labor Relations Board against defendant Brotherhood of Painters, Decorators and Paper Hangers of America and defendant Brotherhood of Painters, Decorators, and Paper Hangers of America Local No. 779.

The plaintiff appeared in said cases, "and testified fully, freely and truthfully by oral testimony or affidavit against the defendants named therein."

All of the labor negotiations pertaining to the joint-venture at Jackson Lock and Dam, the bill for injunction and the charges filed with the NLRB were handled by plaintiff under the direction, control and instructions of Leland M. Wiscombe. Leland M. Wiscombe did thereafter falsely and maliciously represent to defendant Brotherhood at a joint meeting of the Union and an Association of Painting Contractors, known as Painting and Decorating Contractors of America, at LaFayette, Indiana, in November 1959, that the plaintiff had conducted the labor negotiations contrary to his orders and instructions and without his knowledge.

The defendant Unions threatened Wiscombe and Wiscombe Southern with coercive measures, such as strikes and the like, wherever Wiscombe and Wiscombe Southern had contracts unless and as a

condition to not using such coercive measures the plaintiff was discharged. As a proximate consequence of the threats and coercion of the defendant Unions, the plaintiff was discharged by Wiscombe and Wiscombe Southern in December 1959.

In February 1960, he secured employment with Earl Paint Corporation of Utica, New York, and in March 1960 was working on a job for Earl Paint Corporation in Bartow, Florida. A jurisdictional dispute arose over the question of whether or not a member of the Brotherhood of Painters, Decorators and Paper Hangers of America should apply foam insulation to certain tanks on the job. Carl Griffin, a business or area representative for the Brotherhood and its locals, investigated the incident and falsely and maliciously reported to the Brotherhood that the plaintiff was the cause of said dispute. The Brotherhood demanded of Earl Paint Corporation that it discharge the plaintiff and threatened Earl Paint Corporation that if it did not discharge the plaintiff the Brotherhood would take coercive measures against Earl Paint Corporation in the form of strikes and the like throughout the United States. As a proximate consequence of the threats and coercive measures the Earl Paint Corporation discharged the plaintiff on March 30, 1960. Plaintiff requested a hearing before the Brotherhood to present the true factual situation in connection with each of the labor difficulties in which he was involved. The Brotherhood failed and refused to allow plaintiff a hearing.

The complaint alleges that:

"Plaintiff has been unable to secure work in a comparable position in the painting industry as a proximate consequence of the acts of the defendants and has been forced to secure employment in an entirely different field of endeavor.

"By reason of the said acts of defendants, plaintiff has sustained great damage to his property, and ability to work and earn a living for himself, his wife and four children,

he has been deprived of the right to work in his chosen profession, he has suffered great loss of wages and will be deprived in the future of great loss of wages, he has been put to great expense in trying to secure employment in his field of training, and in clearing his name with said defendant Unions and their representatives, he has suffered great anxiety and worry, he has been deprived of his livelihood; and divers other damages have been sustained and will continue to be suffered, all in the sum of Fifty Thousand ($50,-000.00) Dollars.

"WHEREFORE, Plaintiff demands judgment against defendants for the sum of Fifty Thousand ($50,-000.00) Dollars and the cost of this suit."

The first count bases jurisdiction on 42 U.S.C.A. § 1985, and avers that:

"Defendants on, to-wit: October 3, 1959 and thereafter conspired together and with divers others to injure the plaintiff, a witness in a court of the United States within the meaning of 42 U.S.C.A., Section 1985, in his property and earning capacity on account of his having attended and testified in said court freely, fully, and truthfully."

The second count bases jurisdiction on Sections 101(a) (5) and 102 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 411(a) (5) and 29 U.S.C.A. § 412; and alleges that:

"Although plaintiff has withdrawn from active participation in the Brotherhood of Painters, Decorators and Paper Hangers of America, he is an inactive member of said Brotherhood. Plaintiff further avers that he has been disciplined as described hereinabove but has not been served with any written specific charges, has not been given reasonable time to prepare his defense, nor afforded a full and fair hearing; in fact plaintiff has been denied any hearing whatsoever although such hearing has been requested."

The third count bases jurisdiction on Sections 609 and 102 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 529 and § 412, and alleges that:

"Plaintiff avers that although he has withdrawn from active membership in the Brotherhood of Painters, Decorators and Paper Hangers of America, he is an inactive member of said Brotherhood and the said defendants and divers others associated with said labor organizations have disciplined him for exercising his rights to which he is entitled under the provisions of the Labor Management Reporting and Disclosure Act of 1959."

The fourth count bases jurisdiction on Section 704(a) (4) (ii) (B) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 158(b) (4) (ii) (B) and Section 303 of the National Labor Relations Act as amended, 29 U.S. C.A. § 187; and alleges that:

"Plaintiff further avers that defendants and divers other persons connected with said defendants have threatened, coerced and restrained defendants Wiscombe and Wiscombe Southern and Earl Paint Corporation, all of which were engaged in commerce or in an industry affecting commerce where an object thereof was forcing or requiring defendants Wiscombe and Wiscombe Southern and Earl Paint Corporation to cease doing business with the plaintiff."

The fifth count bases jurisdiction on 28 U.S.C.A. §§ 1331 and 1337, and alleges that:

"Plaintiff avers that said acts of said defendants amounted to a conspiracy to obstruct justice in the tribunals of the United States and to obstruct the administration of the laws of the United States.

"Interference with the right of witness to speak in a Federal Tribunal and then go unmolested constitute contempt of such tribunal. The National Labor Relations Board has no power to punish any person or organization for contempt, its powers being limited to those conferred by statute, which do not include the power to punish contempts. The discharge of the plaintiff by threats and coercion, therefore, constituted contempt and a public offense against the United States, though not punishable by the National Labor Relations Board. A conspiracy to commit a contempt or any other public offense is actionable and constitutes a tort. Said acts of defendants constituted a conspiracy to commit contempt of the National Labor Relations Board, and the procurement of the discharge and the discharge of the plaintiff and the ratification thereof by defendants were overt acts in pursuance of said conspiracy."

The sixth count bases jurisdiction as follows:

"Jurisdiction over this claim is pendent to the claims asserted in the first through fifth claims herein. This claim is based upon State law, and is not a separate and distinct non-federal cause of action, but is a distinct ground in support of the same causes of action made the basis of the first through fifth claims herein. The federal questions presented in the first through fifth claims herein are substantial, and if such federal grounds are not established on a trial of this case, the court may retain and dispose of this case upon the ground asserted in his sixth claim, as held in Hurn vs. Oursler, 289 U.S. 238 [53 S.Ct. 586, 77 L.Ed. 1148], and Romero vs. International Terminal Operating Company, 358 U.S. 354 [79 S.Ct. 468, 3 L.Ed.2d 368]."

That count alleges:

" * * * that the defendants by the acts hereinabove described willfully and maliciously caused the plaintiff to be discharged from his employment and prevented plaintiff from obtaining employment or en-

:gaging in his said employment, and ·caused plaintiff to lose much time ·from his work, to-wit, three months, and to lose earnings which he would ·have received had he not been prevented as aforesaid from working, ·and causing plaintiff to suffer much mental anguish, all to the plaintiff's ·damage as aforesaid, and plaintiff ·in addition to his claim for compensatory damages, claims of the defendants such punitive and exemplary damages as are commensurate ·with their malicious and reprehensi'ble conduct as aforesaid and as may seem appropriate to the jury trying this cause to punish defendants for such wrongful conduct and to deter ·defendants and others from committing similar wrongs in the future."

The district court, in dismissing the ·action, opined as follows:

·"The opinion of Judge Grooms in John F. Lankford v. International Brotherhood of Electrical Workers, AFL-CIO, et al., Civil Action No. 9601, Southern Division of the Northern District of Alabama, entered June 27, 1960, affirmed by the United States Court of Appeals for the Fifth Circuit, July 19, 1961, by *per curiam* opinion adopting in full the opinion of Judge Grooms, supra, is dispositive of all questions raised by the complaint except for the issues raised in the second and third claims. The second claim is subject to the fatal objection that the com ·plaint affirmatively shows plaintiff not to have been a member of de ·fendant unions; that plaintiff with ·drew from active participation therein, and that there is no allegation that he had been improperly disciplined.

"For the same reasons the third ·claim is defective. In addition, there is no allegation relating to the exhaustion of administrative remedy." [1]

[1]. The cases referred to are reported as Lankford v. International Brotherhood of Electrical Workers, N.D.Ala., 1960, 196

## COUNT 1.

 The first count in this case charges a violation of the civil rights statute, 42 U.S.C.A. § 1985. In the Lankford case Judge Grooms disposed of a charge similar in some respects:

"This claim does not square with the requirements for a validly stated cause of action under the section referred to. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Dinniddie [Dinwiddie] v. Brown, 5 Cir., 230 F.2d 465; Schatte v. International Alliance, etc., supra. [9 Cir., 182 F.2d 158]." 196 F.Supp. at 664.

Collins v. Hardyman, 1951, 341 U.S. 651, 660, 71 S.Ct. 937, 95 L.Ed. 1253, settled the principle that the kind of conspiracy covered by what is now subsection (3) of section 1985 is of a very limited character, and repeated for emphasis that such conspiracy must be, "for the purpose of *depriving* \* \* \* of the *equal protection of the laws,* or of *equal privileges and immunities under the laws.*" (Emphasis the Court's.) That opinion continued:

" \* \* \* private discrimination is not inequality before the law unless there is some manipulation of the law or its agencies to give sanction or sanctuary for doing so. Plaintiffs' rights were certainly invaded, disregarded and lawlessly violated, but neither their rights nor their equality of rights under the law have been, or were intended to be, denied or impaired. Their rights *under the laws* and to *protection of the laws* remain untouched and equal to the rights of every other Californian, and may be vindicated in the same way and with the same effect as those of any other citizen who suffers violence at the hands of a mob."

341 U.S. at 661, 662, 71 S.Ct. at 942. There is, and can be, no claim that the

F.Supp. 661, affirmed per curiam, 5 Cir., 1961, 293 F.2d 928.

conspiracy charged in Count 1 of the present complaint was for the purpose of depriving plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws. Subsection (3) of section 1985 cannot therefore operate to give jurisdiction.

The averments of the first count are within the language of subsection (2) of section 1985. The operation of that subsection is, however, confined to "any court of the United States." The criminal counterpart of subsection (2) was considered in Todd v. United States, 1895, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982, where it was held that a United States Commissioner was not "a court of the United States within the constitutional sense." Clearly, neither the National Labor Relations Board, nor the Circuit Court of Choctaw County, Alabama, is "a court of the United States."[2] We conclude that neither subsection (2) nor subsection (3) of section 1985 operates to vest jurisdiction of the first count.

 That, however, is not the final answer to whether the first count states a claim within the jurisdiction of the district court. As we commented in Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, 127, 55 A.L.R.2d 505 the theory of the plaintiff in stating his claim is not so important and the complaint should not be dismissed on motion unless, upon any theory, it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of his claim.[3]

A further part of our opinion in Lewis v. Brautigam, supra, appears pertinent to our consideration of the sufficiency of the first count:

"The defendants would have us treat the complaint as filed strictly under the statute providing against

conspiracy to interfere with civil rights, 42 U.S.C.A. § 1985 * * *, which has been often held to reach a conspiracy to deprive one of civil rights only when its object is a deprivation of equality, and not to cover conspiracies to deny due process. * * * We do not think, however, that we are required so to treat the complaint. It charges that the conspiracy was actually carried into effect. If, thereby, the plaintiff was deprived of any rights, privileges or immunities secured by the Constitution and laws, the gist of the action may be treated as one for the deprivation of such rights under the broader civil rights statute, 42 U.S.C.A. 1983 * * *." 227 F.2d at 127, 128.

The complaint does not however, allege that the deprivation of rights was "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," which is necessary to give jurisdiction under section 1983. We conclude that the first count does not properly state a claim under any provision of the Civil Rights Act.

## COUNT 2.

 The second count undertakes to state a claim under the Labor Management Reporting and Disclosure Act of 1959 Sections 101(a) (5) and 102, 29 U.S.C.A. §§ 411(a) (5) and 412:

§ 411(a) (5). *"Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to pre-

---

2. Todd v. United States, supra; McAllister v. United States, 1891, 141 U.S. 174, 180, 11 S.Ct. 949, 35 L.Ed. 693; General Inv. Co. v. Lake Shore & M. S. Ry. Co., 6 Cir., 1920, 269 F. 235, 237; 10 Words and Phrases, Court of the United States perm. ed., pp. 272 et seq., and pocket supplement pp. 85, 86. Compare 28 U.S. C.A. § 451; 29 U.S.C.A. § 113(d); 18 U.S.C.A. § 1503.

3. See also Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780, 785, n. 5.

pare his defense; (C) afforded a full and fair hearing."

§ 412. *"Civil action for infringement of rights; jurisdiction*

"Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

An individual employed as a supervisor may remain a member of a labor organization. Section 14(a) of the Taft-Hartley Act, 29 U.S.C.A. § 164(a) so provides. In commenting on that section, it is said in 1 C.C.H. Labor Law Reporter, paragraph 1675:

"*Participation of supervisors in union activities.*—Section 14(a) of the Act expressly gives supervisors the right to remain or to become members of a labor organization, but it does not guarantee or give supervisors the right to participate actively in the affairs of a union representing rank-and-file employees. The only right of membership guaranteed by Section 14(a) is precisely the right of nominal nonparticipating membership which will allow supervisory employees to protect their seniority and fringe benefits."

The same section is discussed at some length in Local 636 of the United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry Plumbers v. N. L. R. B., 109 U.S.App. D.C. 315, 287 F.2d 354, 361, 362, with the conclusion reached that supervisors may retain their union membership in order that they may protect their seniority and fringe benefits. The kind of membership which the plaintiff might retain after becoming a supervisor and withdrawing from active participation, while more than merely nominal, is of a very limited type, that is, such membership as would protect his seniority and any fringe benefits. Otherwise, supervisors are excluded from the definition of employee. 29 U.S.C.A. § 152(3). It would seem to follow that in order to discipline a supervisor member of a labor organization who has withdrawn from active participation and remains a mere inactive member something must be done to affect his membership insofar as it protects his seniority or fringe benefits.

Certainly the alleged "discipline" must have some relation to the plaintiff's membership in the labor organization. While the second count alleges by way of conclusion "that he has been disciplined," it continues "as described hereinabove," thus bringing before the court all of the facts as theretofore alleged in the complaint, the substance of which has already been stated in this opinion. Under those facts it does not appear that the plaintiff's discharge from Wiscombe Southern, his discharge from the Earl Paint Corporation, or any of the other injuries which plaintiff has suffered have any relationship to his membership in the Brotherhood. The complaint alleges that the plaintiff is to this good day an inactive member of the Brotherhood. We conclude therefore that, while the complaint alleges that the plaintiff has been punished, it does not show that he has been disciplined as a member of the Brotherhood, and we agree with the district court that Count 2 fails to state a claim upon which relief can be granted.

## COUNT 3.

██ Count 3 is based on Section 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C.A. § 412, which has been heretofore quoted, and upon Section 609 of said Act, 29 U.S.C.A. § 529:

"§ 529. *Prohibition on certain discipline by labor organization*

"It shall be unlawful for any labor organization, or any officer, agent,

shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section."

To state a claim upon which relief can be granted under those sections it is also necessary that the injury to which the plaintiff has been subjected have some relation to his membership in the labor organization in order for it to constitute "discipline," and that element is again lacking in the third count.

### COUNT 4.

■ The fourth count is based on Section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187, which permits a suit in a district court for injuries to business or property by reason of any violation of subsection (a) of said section. Specifically, the claim under this count is based on the 1959 amendment to section 303 of the Taft-Hartley Act, 29 U.S.C.A. § 187, which reads as follows:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title. As amended Sept. 14, 1959, Pub.L. 86–257, Title VII, § 704(e), 73 Stat. 545."

29 U.S.C.A. § 158(b) (4) defines unfair labor practices of a labor organization and, among other provisions, contains the following:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\* \* \* \* \* \*

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

It is the appellant-plaintiff's contention that the labor organization caused his injury by "forcing or requiring *any person* \* \* \* to cease doing business with *any other person* \* \* \*," that is, by requiring his employers, Wiscombe Southern and Earl Paint Corporation, to discharge the plaintiff. We are cited to no case where the language "to cease doing business with any other person" as used in this section has the same meaning as to discharge an employee. Literally, it could have that meaning but that would be foreign to the whole purpose of the section which has to do with a secondary boycott ban. No secondary boycott was involved in this case.

29 U.S.C.A. § 158(b) (2), specifically dealing with a union's causing an employer to discharge "an employee" as defined by the act, tends to indicate that the ordinary relation of employer and employee is not contemplated by the words in sec-

tion 158(b) (4), "to cease doing business with any other person." True, supervisors are excluded from the definition of employee [29 U.S.C.A. § 152(3)] and literally supervisors can come within section 158(b) (4) as "any other person." The question is not free from doubt. In our opinion, however, the purpose of the statute prevails over its literal wording. We do not think that the relation of employer and employee, including one employed as a supervisor, is that of "any other person" within section 158(b) (4).

### COUNT 5.

The fifth count undertakes to state a claim under general federal jurisdictional statutes, 28 U.S.C.A. §§ 1331, 1337. The plaintiff argues that it was his right as a citizen to report a violation of the federal law to proper federal authorities and to give affidavits and testimony concerning such violation, and that it is the inherent power and duty of the federal government to protect persons reporting and giving evidence of such violations. Whether any such duty exists and, if so, how the government's duty should be discharged are matters more properly addressed to the Congress than to the Courts. If the federal courts should assume jurisdiction on any such broad theory there would be little reason for the strict limitations imposed on the operations of civil rights acts, as heretofore discussed in our consideration of the sufficiency of Count 1. Under the principles recently and fully discussed in International Association of Machinists v. Central Airlines, Inc., 5 Cir., 1961, 295 F.2d 209, we think that the fifth count fails to disclose affirmatively a federally-created cause of action. Hence, the action does not "arise under" federal law for purposes of the general federal jurisdictional statutes, 28 U.S.C.A. §§ 1331 and 1337.

### COUNT 6.

The sixth count is admittedly not a separate and distinct federal claim, but is a claim based on state law pendent to the claims asserted in the first five counts. Since the first five counts fail to state claims upon which relief can be granted within the jurisdiction of a federal district court, there is no basis on which the court can retain jurisdiction of the sixth count. We conclude that the district court properly dismissed the action and its judgment is

Affirmed.