1997 SD 103

**Marvin THOMPSON, Plaintiff and Appellant,**

v.

**Charles SUMMERS, Defendant and Appellee.**

**No. 19940.**

Supreme Court of South Dakota.

Argued June 4, 1997.

Decided Aug. 13, 1997.

Dave L. Claggett of Claggett & Madsen, Spearfish, for plaintff and appellant.

Donald A. Porter of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Personal injury action was dismissed for failure to state a claim upon which relief could be granted. We reverse.

## FACTS

[¶ 2.] On September 4, 1993, Charles Summers was piloting a hot air balloon in an instructional flight over Rapid City, accompanied by flight student Matt McCormick. At about 8:25 a.m., Summers attempted to land the balloon in a public recreational area of Rapid City's flood plain known as the "green-

way." Marvin Thompson, also a hot air balloon pilot, was at the greenway and recognized the balloon as one he sold to Summers. As Thompson observed Summers' descent, he became concerned the wind was going to drag the balloon into nearby high voltage power lines. As the balloon skimmed across the ground toward the power lines, Thompson ran over and seized the basket of the balloon, hoping to prevent it from making contact with the power lines. Despite his efforts, Thompson suffered severe electrical burns to over 60% of his body. Summers and McCormick were apparently not injured.

[¶ 3.] Thompson sued Summers for his injuries, claiming he was negligent in not employing the rip cord to "rip out" the balloon, a procedure which instantly deflates and stops the balloon. Failure to do so, he claims, was negligence and the cause of his injuries. He argues that, under the "rescue doctrine," it was foreseeable to Summers that a bystander might intervene when Summers' negligence put others in peril. In addition, Thompson claims Summers violated several state and federal statutory duties of care pertaining to hot air balloon piloting and landing safety, including proper use of the ripcord.

[¶ 4.] Without submitting an answer, Summers made a motion to dismiss the complaint, alleging that Thompson failed to state a claim upon which relief could be granted according to SDCL 15–6–12(b)(5) [hereinafter Rule 12(b)(5) ], which provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> . . .
>
> (5) Failure to state a claim upon which relief can be granted[.] [1]

The trial court granted the motion and dismissed the complaint with prejudice. Thompson appeals.

1. SDCL 15–6–12(b)(5) is identical to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

[¶ 5.] A motion to dismiss under Rule 12(b)(5) tests the law of a plaintiff's claim, not the facts which support it. *Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592; *Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d 416, 418 (S.D. 1993) (citations omitted). The motion is viewed with disfavor and is rarely granted. *Schlosser* directs the trial court to consider

the complaint's allegations and any exhibits which are attached. The court accepts the pleader's description of what happened along with any conclusions reasonably drawn therefrom. The motion may be directed to the whole complaint or only specified counts contained in it. . . . "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) ]. The question is whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states *any valid claim of relief.* The court must go beyond the allegations for relief and "examine the complaint to determine if the allegations provide for relief on *any possible theory.*" [quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1971) ].

506 N.W.2d at 418 (emphasis added). As this appeal presents a question of law, our review is de novo, with no deference given to the trial court's legal conclusions. *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771.

## [¶ 6.]WHETHER ANY LEGAL THEORY EXISTS TO SUPPORT THOMPSON'S CLAIM.

[¶ 7.] Thompson advances at least three legal theories which may support his cause of action. We need not, and do not, decide whether he will ultimately succeed on any of these theories. *See Schlosser*, 506 N.W.2d at 418:

[P]leadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action as this is a matter of proof, not pleadings. The rules of procedure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations.

(Quoting *Janklow v. Viking Press*, 378 N.W.2d 875, 877 (S.D.1985) (citing *Federal Practice and Procedure*, *supra* )).

[¶ 8.] First, Thompson argues that the common law of negligence, particularly the "rescue doctrine," is applicable to this case.[2] That doctrine is simply an adjunct of the common law of negligence. It is "nothing more than a negligence doctrine addressing the problem of proximate causation." *Lowery v. Illinois Cent. Gulf R.R. Co.*, 891 F.2d 1187, 1194 (5th Cir.1990); *accord* Stuart M. Speiser et al., *The American Law of Torts* § 9:23, at 1147 (1985) ("In considering the

---

**2.** In response to Chief Justice Miller's special writing, we are reversing on precisely the three theories which he lists as meriting reversal. The rescue doctrine is not, standing alone, a viable theory. It is part of negligence in the same way that respondeat superior, vicarious liability, imputed negligence, and concurrent negligence are a part of negligence. Whether the rescue doctrine will be adopted in South Dakota is premature at this state of the proceedings and must await proper disposition upon remand.

However, the rescue doctrine was pled, argued, and reached even if the precise term "rescue doctrine" was not employed. The complaint clearly demonstrates that Thompson set forth the facts and essential elements of this cause of action. The sum total of the trial court's decision is as follows:

Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted is hereby granted. In order for a negligence action to stand, there must be a duty on the part of the defendant running to the plaintiff; the existence of such a duty is a question of law for the Court. This Court finds that no such duty has been established by the Plaintiff in the case at bar, and therefore the case is dismissed. Defendant is requested to draft and submit the appropriate Order.

By determining that no duty existed, the trial court rejected all three theories, including the common law of negligence, of which the rescue doctrine is a part.

rescue doctrine and its ramifications, it must be always kept in mind that many—if, indeed not most—American courts regard it in terms of proximate causation."). This theory provides that one who, through negligence, jeopardizes the safety of another, may be held liable for injuries sustained by a "rescuer" who attempts to save the other from injury. *See* 57A AmJur2d *Negligence* § 689 (1989):

> A rescuer's right of action against the initial negligent actor rests upon the view that one who imperils another at a place where there may be bystanders, must take into account the chance that some bystander will yield to the impulse to save life or even property from destruction and will attempt a rescue; negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well.

(Footnotes & citations omitted). Interestingly, the rescue doctrine can be traced to an 1822 case involving a crowd rushing to assist a descending balloonist. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 44, at 307 & n.63 (5th ed.1984) (citing *Guille v. Swan*, 19 Johns. 381 (N.Y. 1822), and noting that since that case, the concept of the rescuer is "nothing abnormal").

▮▮▮▮ [¶ 9.] Summers argues that Thompson cannot raise this theory in this appeal because he did not present it to the trial court. We disagree for two reasons: First, Thompson's complaint and his brief in opposition to the motion to dismiss adequately set forth his reliance on the rescue doctrine.[3] In his complaint, he stated:

> Plaintiff perceived the situation to be an imminent threat to the general public on land and further perceived Defendant and Matt McCormick to be in imminent danger of severe physical harm or death. Plaintiff, *in an attempt to prevent the same,* went to the location of the balloon and grabbed on to it to help prevent it from drifting into the power lines.

(Emphasis added). In his brief, he reiterates the foregoing portion of his complaint, and adds: "Thompson responded to the emergency. In attempting to prevent an accident from happening, he grabbed the balloon to help prevent it from hitting the power lines."

[¶ 10.] In opposing the motion to dismiss, Thompson briefed the case of *Olson v. Waitman*, 88 S.D. 443, 221 N.W.2d 23 (S.D.1974), which is not precisely on point, but somewhat analogous to the rescue doctrine, and certainly a common law negligence case. That case held that the jury was properly instructed that a plaintiff may have been contributory negligent when she was pinned under a car after she got behind it to push it from a ditch. However, it was error to so instruct the jury on the plaintiff's second claim of negligence (she was severely burned after the defendant attempted to drive the car off of her). This court held that the plaintiff had two separate claims of negligence against the defendant and stated:

> Regardless of how negligent the plaintiff may have been in getting into this predicament, she did not thereby give the defendant license to thereafter injure her with impunity.

3. While Thompson's complaint did not include the term "rescue doctrine", it pleads a legally sufficient cause of action for negligence under "notice pleading" theory. See SDCL 15–6–8(a):

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain
(1) a *short and plain statement* of the claim showing that the pleader is entitled to relief, and
(2) a demand for judgment for the relief to which he deems himself entitled.
Relief in the alternative or of several different types may be demanded.

(Emphasis added); *see also Norwest Bank Black Hills v. Rapid City Teachers Fed. Credit Union,*

433 N.W.2d 560, 563 (S.D.1988) ("Under SDCL 15–6–8(a) it is not necessary to plead 'duty' in negligence cases where the existence of a duty may be logically inferred from the claim stated in one's complaint."); *accord Korstad–Tebben, Inc. v. Pope Architects, Inc.,* 459 N.W.2d 565, 568 (S.D.1990). Thompson claimed that Summers breached a duty to him by failing to rip out the balloon. It did not require the trial court to "explore every conceivable theory" (*infra* ¶ 25 (Miller, C.J., concurring in result)) to ascertain whether a duty was indeed owed. Duty is based upon foreseeability of injury to another. Analysis of this case depends upon whether injury to Thompson was foreseeable to Summers, and the rescue doctrine simply facilitates the analysis.

*Id.* at 446, 221 N.W.2d at 25 (remanding for new trial with proper instructions).

[¶ 11.] Clearly, Thompson adequately outlined his claim even if he did not include the term "rescue doctrine". *See, e.g., Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 SCt 208, 62 L.Ed.2d 135 (1979) (stating that a complaint should not be dismissed because it does not state with precision all elements that give rise to a legal basis for recovery); *accord Jackson Sawmill Co., Inc., v. United States,* 580 F.2d 302, 306 (8th Cir.1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

[¶ 12.] The second reason we disagree with Summers' argument that Thompson cannot raise a legal theory for the first time on appeal concerns the nature of a Rule 12(b)(5) motion. It is settled law that the trial court is under a duty to determine if the plaintiff's allegations provide for relief on *any* possible theory, regardless of whether the plaintiff considered the theory. *Schlosser,* 506 N.W.2d at 418; *Eide v. E.I. Du Pont De Nemours & Co.,* 1996 SD 11, ¶ 7, 542 N.W.2d 769, 771; *Federal Practice and Procedure* § 1357; *Seeley v. Brotherhood of Painters,* 308 F.2d 52, 58 (5thCir.1962) ("[T]he theory of the plaintiff in stating his claim is not so important and the complaint should not be dismissed on motion unless, upon any theory, it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of his claim."); *cf. Doss v. South Cent. Bell Tel. Co.,* 834 F.2d 421, 424 (5th Cir.1987) ("[T]he fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper theory."); *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 714 (8th Cir.1979) ("The 'theory of the pleadings' doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the federal rules.").

[¶ 13.] Summers argues the motion to dismiss was properly granted because Thompson cannot establish a duty owed by Summers to Thompson. Summers claims that he would have had to request Thompson's assistance to establish a duty under these circumstances. At the very least, he argues, Summers must have been aware of Thompson's presence.[4] At oral argument, counsel for Summers went so far as to state there must be a "relationship" between the plaintiff and the defendant before a duty can be established. On the contrary, it is *foreseeability* of injury to another, not a *relationship* with another, which is a prerequisite to establishing a duty necessary to sustain a negligence cause of action. See SDCL 20–9–1, wherein the Legislature codified the common law of negligence: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." See also *Muhlenkort v. Union County Land Trust,* 530 N.W.2d 658, 662 (S.D.1995), where this court stated, "To establish a duty on the part of the defendant, it must be foreseeable that a party would be injured by the defendant's failure to discharge that duty."

[¶ 14.] Additionally, Summers misapprehends the principles of the rescue doctrine. The basic theory of this doctrine is that the defendant's negligence in placing another in a position of imminent peril is not only a wrong to that person, but also to the rescuing plaintiff. *Wharf v. Burlington N. R.R. Co.,* 60 F.3d 631, 635 (9th Cir.1995); *Dinsmoore v. Board of Trustees of Memorial Hosp.,* 936 F.2d 505, 507 (10thCir.1991); *Lowery,* 891 F.2d at 1194; *Bonney v. Canadian Nat'l Ry. Co.,* 800 F.2d 274, 276 (1st Cir.1986); *Barger v. Charles Mach. Works, Inc.,* 658 F.2d 582, 587 (8th Cir.1981); *Barnes v. Geiger,* 15 Mass.App.Ct. 365, 446 N.E.2d 78, 81–82 (1983) (collecting cases); *Metzger . v. Schermesser,* 687 S.W.2d 671, 672 (Mo.Ct. App.1985); *see generally The American Law of Torts, supra* § 9:23; *Prosser & Keeton, supra* § 44, at 307–09 (collecting cases from nearly every state). The rescuer may also

---

4. Although not material on a motion to dismiss, Summers claims he did not know until afterward that Thompson tried to help him land safely. As noted, the court accepts the pleader's description of events. *Schlosser,* 506 N.W.2d at 418.

recover from the imperiled party if that party's negligence caused the peril. *Wharf*, 60 F.3d at 635. As indicated above, "negligence which creates peril invites rescue and, should the rescuer be hurt in the process, the tortfeasor will be held liable not only to the primary victim, but to the rescuer as well." 57A AmJur2d *Negligence* § 689 (1989). Judge Cardozo's statement regarding the rescue doctrine is often quoted in these cases:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.

*Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437, 437 (1921).

[¶ 15.] This theory of "duty" comports with the well-established view of this court. *See, e.g., Mark, Inc. v. Maguire Ins. Agency, Inc.*, 518 N.W.2d 227, 229–30 (S.D.1994) ("Whether a duty exists depends on the foreseeability of injury."); *accord Muhlenkort*, 530 N.W.2d at 662; *see also Mid–Western Elec., Inc. v. DeWild Grant Reckert & Assocs. Co.*, 500 N.W.2d 250, 254 (S.D.1993) ("We instruct trial courts to use the legal concept of foreseeability to determine whether a duty exists.").

[¶ 16.] Under Thompson's second theory, he claims that Summers violated a standard of care as provided in SDCL chapter 50–13, "Air Space and Operation of Aircraft." "Aircraft" includes balloons. SDCL 50–13–1. SDCL 50–13–4 provides:

> Flight in aircraft over the lands and waters of this state is lawful, unless ... so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath.

*See also* SDCL 50–13–6, which provides, in relevant part:

The owner and the pilot, or either of them, of every aircraft which is operated over lands or waters of this state shall be liable for injuries or damage to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom in accordance with the rules of law applicable to torts in this state.

Additionally, SDCL 50–13–16 provides:

> It is a Class 1 misdemeanor to operate an aircraft within the airspace over, above and upon the lands and waters of this state, carelessly and heedlessly in intentional disregard of the rights or safety of others, or without due caution and circumspection in a manner so as to endanger or be likely to endanger any person or property.

All of these statutes were presented to the trial court. This court has consistently held that "an unexcused violation of a statute enacted to promote safety constitutes negligence per se." *Bell v. East River Elec. Power Coop., Inc.*, 535 N.W.2d 750, 755 (S.D. 1995) (citing *Engel v. Stock*, 88 S.D. 579, 225 N.W.2d 872, 873 (1975); *Bothern v. Peterson*, 83 S.D. 84, 155 N.W.2d 308 (1967); *Blakey v. Boos*, 83 S.D. 1, 153 N.W.2d 305 (1967)).

[¶ 17.] Third, Thompson argues that Summers violated certain federal regulations [5] relating to hot air balloon piloting and landing safety, including proper use of the ripcord in emergency operations. *See, e.g.,* 14 C.F.R. § 61.125(e)(5), which requires applicants for a commercial certificate for piloting balloons to have knowledge in

> Operating principles and procedures for free balloons, including emergency procedures such as crowd control and protection, high wind and water landings, and operations in proximity to buildings and power lines.

Additionally, *id.* § 61.127(f) sets minimum proficiency requirements for balloon pilots and requires competence in, among other procedures, landing and emergency operations, including the use of the ripcord. *See also id.* § 91.13 ("No person may operate an

---

5. "The reasons which persuaded us to hold that the violation of a safety statute or ordinance is negligence as a matter of law apply with equal validity to safety rules and regulations[.]" *Blakey*, 83 S.D. at 7, 153 N.W.2d at 308.

aircraft in a careless or reckless manner so as to endanger the life or property of another."). These regulations were presented to the trial court.

[¶ 18.] Whether Summers violated one or more of these statutes and regulations, and if so, whether the violation was the proximate cause of Thompson's injuries constitutes a question for the factfinder. Violation of the statute "alone is not sufficient to render them liable to the plaintiff. Before they may be held to respond in damages it must further appear that their violation of the duty placed on them by this rule was the proximate cause of plaintiff's injury. The burden of establishing this is on the plaintiff." *Blakey,* 83 S.D. at 8, 153 N.W.2d at 309 (citation omitted); *accord Musch v. H–D Coop., Inc.,* 487 N.W.2d 623, 625–26 (S.D. 1992):

> With regard to the proximate cause issue, this court has recognized that the mere violation of a statute is insufficient to support an action for damages. Rather, a plaintiff must show that the violation of a statutory duty was the proximate cause of his injury to support a recovery in negligence. *Serles v. Braun,* 79 S.D. 456, 113 N.W.2d 216 (1962); *Zeller v. Pikovsky,* 66 S.D. 71, 278 N.W. 174 (1938). In *Leslie v. City of Bonesteel,* 303 N.W.2d 117, 119 (S.D.1981), we stated: "For proximate cause to exist, 'the harm suffered must be found to be a foreseeable consequence of

the act complained of. . . . The negligent act must be a substantial factor in bringing about the harm.' *Williams v. United States,* 450 F.Supp. 1040, 1046 (D.S.D. 1978)."

(Emphasis & alterations omitted). Questions of proximate cause are for the jury in "all but the rarest of cases." *Bauman v. Auch,* 539 N.W.2d 320, 325 (S.D.1995); *Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900, 903 (S.D. 1994); Holmes v. Wegman Oil Co., 492 N.W.2d 107, 114 (S.D.1992).

## CONCLUSION

[¶ 19.] "Negligence is the breach of a legal duty imposed by statute or common law." *Stevens v. Wood Sawmill, Inc.,* 426 N.W.2d 13, 14 (S.D.1988) (citing *Walz v. City of Hudson,* 327 N.W.2d 120, 122 (S.D.1982)). Thompson clearly outlined a claim under a common-law negligence theory. *See id.* ("The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure."). The rescue doctrine is part of the common law of negligence. Therefore, under the law governing a motion to dismiss under Rule 12(b)(5), it was improper to dismiss Thompson's lawsuit even if the doctrine was not yet addressed in South Dakota.[6]

---

6. While this is the first time issues involving the rescue doctrine have been presented to this court, the public policy inherent in the doctrine is already in our statutes. The policy underlying the rescue doctrine is the public's need for quick and courageous action in emergency situations. Compare SDCL 20–9–4.1, which provides individuals general immunity from liability for their actions in emergency situations:

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages shall extend to the operation of any motor vehicle in connection with any such care or services. . . .

(Emphasis added). By adopting this "Good Samaritan" statute, the Legislature adopted the public policy of encouraging persons, and—as the emphasized language indicates—not just professional persons, to act on their instinct when confronted with emergency situations. Of course, persons paid to act in emergencies cannot recover from the tortfeasor under the rescue doctrine. *See, e.g., Gray v. Russell,* 853 S.W.2d 928, 931 (Mo.1993) (en banc) (explaining the rationale for the "firefighter rule"):

> Firefighters and police officers are hired, trained, and compensated to deal with dangerous situations affecting the public as a whole. Because of their exceptional responsibilities, when firefighters and police officers are injured in the performance of their duties the cost of their injuries should also be borne by the public as a whole, through the workers' compensation laws and the provision of insurance benefits and special disability pensions.

(Citation omitted).

[¶ 20.] Additionally, Thompson set out South Dakota statutes and federal regulations which establish the standard of care for a hot air balloon pilot. The question is "whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states *any* valid claim of relief." *Schlosser,* 506 N.W.2d at 418 (emphasis added). Thompson asserts at least three theories which may support his cause of action. Therefore, the trial court erred in holding as a matter of law that Thompson did not allege a duty owed by Summers. Whether he can ultimately succeed presents questions not capable of resolution by a *motion to dismiss.* We reverse and remand for trial.

[¶ 21.] KONENKAMP, J., concurs.

[¶ 22.] MILLER, C.J., and AMUNDSON and GILBERTSON, JJ., concur in result.

MILLER, Chief Justice (concurring in result).

[¶ 23.] I agree with Justice Sabers' ultimate result and his discussion noting that Thompson's complaint states various theories which may support the cause of action (common-law negligence, state statutes and federal regulations). I must merely concur in result, however, because I disagree with and disassociate myself from the discussion and analysis of the rescue doctrine, specifically ¶¶ 8–16 *supra.*

[¶ 24.] Analysis of the propriety and applicability of the rescue doctrine at this juncture in these proceedings is premature at best. The doctrine was not argued or advanced by Thompson as a theory to support his cause of action below. It is well settled that we will not review issues which have not been presented to the trial court.

*Boever v. Board of Accountancy,* 526 N.W.2d 747, 750 (S.D.1995); *Fullmer v. State Farm Ins. Co.,* 514 N.W.2d 861, 866 (S.D.1994) (citations omitted). Matters not determined by the trial court are not appropriate for appellate review. *See Schull Construction Co. v. Koenig,* 80 S.D. 224, 229, 121 N.W.2d 559, 561 (1963). The parties agree and the trial court's memorandum indicates that the rescue doctrine was not considered in the trial court's grant of the motion to dismiss.[7] Accordingly, we need not and should not examine the doctrine at this time.[8]

[¶ 25.] Any contention that the rescue doctrine was presented to the trial court via the language of the complaint is not persuasive reasoning for reviewing the rescue doctrine as a possible theory of recovery, especially when Thompson specifically concedes he failed to consider the doctrine or present it for the trial court's consideration. While pleadings need not be so artfully drafted as to specifically list each and every possible claim, the complaint must set forth the facts alleged and contain the essential elements of the cause of action pursued in order to be sufficient. *Harmon v. Christy Lumber, Inc.,* 402 N.W.2d 690, 693 (S.D.1987). *See also Weller v. Spring Creek Resort, Inc.,* 477 N.W.2d 839, 841–42 (S.D.1991). Our deferential standard of review allowing complaints to survive a motion to dismiss for failure to state a claim so long as the "complaint states any valid claim for relief .... 'on any possible theory,' " *Schlosser v. Norwest Bank South Dakota,* 506 N.W.2d 416, 418 (S.D.1993) (citations omitted), does not require the trial court to ferret out and advance a theory on behalf of a party which has not been recognized in this jurisdiction. Such a requirement would put the trial court

---

7. At oral argument, Summers argued and Thompson conceded that the trial court was never presented with the rescue doctrine theory and did not reach the issue.

8. There are a number of reasons for leaving an analysis of the rescue doctrine for another day. The rescue doctrine presents an issue of first impression in this jurisdiction. The failure to raise the doctrine below foreclosed the opportunity for full briefing and presentation of argument on the issue. The rescue doctrine should

not be analyzed without the benefit of all the pertinent authorities and public policy arguments if a complete and informed decision is to be reached.

Additionally, "[p]rinciples of judicial restraint dictate that when an issue effectively disposes of the case, other issues that are presented should not be reached." *Poppen v. Walker,* 520 N.W.2d 238, 248 (S.D.1994). The conclusion that the trial court's motion to dismiss should be reversed on other theories negates the necessity of addressing the rescue doctrine on this appeal.

in the inappropriate position of advocating on behalf of a party and would unduly strain judicial resources in an effort to explore every conceivable theory, whether recognized in this jurisdiction or not.

[¶ 26.] Thompson's complaint states sufficient theories to support his cause of action; therefore, the trial court's grant of the motion to dismiss was in error and I agree with Justice Sabers that it should be reversed. However, I respectfully assert that the issue of whether the rescue doctrine is a valid theory of common-law negligence in this jurisdiction should be left until another day when the issue has been properly presented for our review.

[¶ 27.] I am authorized to state that Justices AMUNDSON and GILBERTSON join in this concurrence in result.