2005 SD 72

**HERTZ MOTEL and Marjorie LaFave, Plaintiffs and Appellees,**

v.

**ROSS SIGNS and O'Neill Neon Company, Defendant and Appellant.**

**No. 23381.**

Supreme Court of South Dakota.

Considered on Briefs on Feb. 15, 2005.

Decided June 8, 2005.

Karen A. Leonard, Shawn M. Nichols of Cadwell, Sanford, Deibert & Garry, LLP, Sioux Falls, South Dakota, Attorneys for plaintiffs.

David A. Gerdes, Christina L. Fischer of May, Adam, Gerdes and Thompson, LLP, Pierre, South Dakota, Attorneys for defendant.

SABERS, Justice.

[¶ 1.] Joe Ross (Ross) was hired by Marjorie LaFave (LaFave), the owner and operator of the Hertz Motel located in Bonesteel, South Dakota, to remove and reinstall the motel's neon lighting. Four days after Ross reinstalled the neon lighting, the motel was damaged by fire. La-Fave filed suit against Ross alleging negligence and the trial court granted LaFave's

motion for summary judgment. Ross appeals and we reverse and remand for trial.

### Facts

[¶ 2.] The Hertz Motel was built in approximately 1953. In 1972, LaFave and her late husband purchased the motel. At the time the motel was purchased, it was equipped with neon lighting that illuminated the front of the motel. Neon border tubes outlining the building's roof line were connected to the soffit area of the front side of the motel and on the north and south ends of the motel. In addition, the motel's "No Vacancy" and "Hertz Motel" signs were both illuminated with neon.

[¶ 3.] In July of 1999, the motel was damaged by a hail storm. The motel's roof needed to be re-shingled and a portion of the siding needed to be replaced. In the spring of 2000, LaFave hired Greg Hausman (Hausman), a local contractor, to make the roof and siding repairs. Both LaFave and Hausman agreed that the neon tubing needed to be removed so that it would not be damaged while the repairs were being made. LaFave hired Ross, the owner of Ross Signs and O'Neill Sign Company (Ross Signs), to remove the neon and replace it when the work was completed. Ross removed the neon tubes in April of 2000. On May 4, 2000, after the repairs to the motel had been completed, he reinstalled the neon border tubes.

[¶ 4.] Four days later, on May 8, 2000, a fire occurred at the Hertz Motel. On the evening of the fire, LaFave had turned on the neon lights and then left for a few hours. She later returned to the motel and turned off the neon lights around 10:30 p.m., just before going to bed. Within a half hour to forty-five minutes after switching the lights off, the motel's doorbell began to ring continuously. When LaFave investigated, she discovered smoke and flames coming from the roof of the motel. LaFave alerted the local fire department and exited the motel safely. The parties stipulated that the fire caused $106,689 damage to the motel.

[¶ 5.] LaFave brought this action against Ross asserting that his negligence in reinstalling the neon tubes caused the fire. LaFave filed a motion for summary judgment alleging that Ross' work did not comply with the National Electric Code (NEC) and therefore he was negligent per se. Circuit Court Judge Kathleen Trandahl granted LaFave's motion for summary judgment and awarded her $150,797 damages and prejudgment interest. Ross appeals claiming that there are genuine issues of material fact.

### Standard of Review

[¶ 6.] In reviewing a trial court's order granting a motion for summary judgment, "[w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided." *Flugge v. Flugge*, 2004 SD 76, ¶ 5, 681 N.W.2d 837, 839–40 (citing *Luther v. City of Winner*, 2004 SD 1, ¶ 6, 674 N.W.2d 339, 343). "We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party." *Id.* "Questions of law are reviewed de novo." *In re Estate of Martin*, 2001 SD 123, ¶ 15, 635 N.W.2d 473, 476.

[¶ 7.] **Whether the trial court erred in granting LaFave's Motion for Summary Judgment.**

[¶ 8.] The trial court found that Ross violated the NEC without lawful excuse and was negligent as a matter of law. On appeal, Ross argues that the NEC does not apply to him because he is not required to be a licensed electrician under State law. Ross also contends that proximate cause must exist between an alleged violation of a safety statute and the resulting injury or damage.

*Applicability of the NEC*

▬ [¶ 9.] "[A]n unexcused violation of a statute enacted to promote safety constitutes negligence per se." *Fritz v. Howard Township*, 1997 SD 122, ¶ 17, 570 N.W.2d 240, 243 (quoting *Thompson v. Summers*, 1997 SD 103, ¶ 16, 567 N.W.2d 387, 393). South Dakota has adopted the NEC.[1] The purpose of the NEC is "the practical safeguarding of persons and property from hazards arising from the use of electricity." The NEC has a specific section dedicated to neon lighting and the provisions of this section detail a number of electrical considerations specific to the art of neon lighting installation. These safety rules are intended to protect the general public from the improper installation of neon lighting systems.

[¶ 10.] LaFave alleges the neon lighting system of the Hertz Motel violates a number of NEC provisions.[2] On appeal, Ross does not contest these alleged violations but asserts that the NEC is not intended to govern untrained persons such as himself, rather it sets the standard for engineers, electrical contractors and electricians. As authority, he cites SDCL 36–16–16(4), which provides that persons who replace lamps and connect portable electrical devices to suitable receptacles that have been permanently installed are not required to have an electrician's license. Since Ross was only disconnecting and then reconnecting neon tubing that had been permanently installed many years prior to the incident, he argues that he was not required to hold an electrician's license and therefore the NEC standards do not apply to his work.

[¶ 11.] Ross' argument is contradicted by Dan Choudek (Choudek), a professional engineer and the president of a forensic electrical engineering consulting firm. Choudek testified that the NEC "applies to the end product or the work that's done" and that it specifies "what the work product or end product should be" as opposed to specifying who can do the work. Furthermore, Pete Bruce (Bruce), who owns a sign business comparable to Ross Signs, testified that if the neon lighting installation is out of compliance with the NEC at the time of reinstallation, the installer must reinstall the tubes to comply with NEC standards.

▬ [¶ 12.] Based on the above, the trial court did not err in holding that the NEC was enacted to protect the public from personal injuries and property damage resulting from the improper installation of neon lighting systems, that South Dakota has adopted the NEC, and that neon tube installers such as Ross are not exempt from complying with the code. However, even if Ross' actions constituted negligence per se, liability must depend upon negligence causing the fire and being the proximate cause of the damages.

*Proximate Cause*

▬ [¶ 13.] "With regard to the proximate cause issue, this court has recognized that the mere violation of a statute is insufficient to support an action for damages. Rather, a plaintiff must show that the violation of a statutory duty was the proximate cause of his injury to support a recovery in negligence." *Thompson*, 1997 SD 103, ¶ 18, 567 N.W.2d at 394 (citing *Serles v. Braun*, 79 S.D. 456, 113 N.W.2d 216 (1962)).

---

1. "Electric light, power, and heating installations in this state shall conform to the National Electric Code." SD Admin R 20:44:22:01 (2004).

2. LaFave's expert witness alleges that the motel's neon lighting system violated nine separate provisions of the NEC.

[¶ 14.] Ross contends that there are genuine issues of material fact as to the proximate cause of the fire. Although Ross was the last person to work on the neon tubing before the fire, he argues that over the motel's many years of existence one can only imagine the number of repairs that have been made to the neon lighting system. Rick Schmitz (Schmitz), an electrician from Bonesteel, testified that he had performed electrical work on the motel's neon lighting system on a number of different occasions prior to the fire. On one particular occasion that occurred prior to 1996, Schmitz was hired by the LaFaves to correct a problem with electrical arcing that was occurring between the neon tube wiring and the metal soffits. This problem apparently arose shortly after the metal soffits were installed on the motel. In an attempt to correct the arcing problem, Schmitz stated that he installed a porcelain insulator/bushing over the wiring at a point where it passed through the metal soffit.[3] Schmitz also recalled that at the time the soffits were installed he suggested to the LaFave's that the wiring for the neon lighting should be inspected. He further testified that on at least one other occasion he reinstalled a neon tube after it had been repaired. LaFave corroborated this by testifying that on several occasions when the neon tubes were damaged she would take them down herself, have them repaired, and then have Schmitz reinstall them.

[¶ 15.] In regard to the origin of the fire, Choudek, who has been recognized as an expert in the "field of fire origin and cause investigation" in various state and federal courts throughout the country, concluded that the fire originated in the area near the office door where wiring from one of the neon tubes passed through the metal soffit. He based this conclusion largely on evidence of electrical arcing and burn patterns.

[¶ 16.] Todd Archambeau (Archambeau), an electrical contractor with over 29 years of experience as an electrician and 10 years of experience working with neon signs, provided expert testimony on Ross's behalf. As to the origin of the fire, Archambeau stated the following in his written report:

> While I do not profess to be a fire cause and origin expert, my review of the photographs and text of Daniel Choudek's report causes me to believe that the fire occurred in the attic near the transformer above the door to the motel office. It is my understanding that Mr. Ross, on the occasion that he reattached the neon tubing shortly before the fire, was never in the attic and had nothing to [do] with that wiring.[4]

---

3. In regard to the arcing, Schmitz testified as follows:

    Q: What was it that you did to try to correct the problem?

    A: Well, I know that we experimented with a plastic sleeve which didn't seem to work with it. It broke down again. I think we just went to a porcelain sleeve into [sic] it. That stopped it from arcing then.

    Q: What was the cause of the arcing?

    A: The metal soffit. The wire was arcing off to the metal soffit. Evidently, when they put the metal [soffits] up, they broke some of the glass insulators or broke the glass insulator, anyway, or it got shoved back up into it.

4. At the summary judgment hearing, Judge Trandahl rejected Archambeau's testimony on the basis that there was not sufficient foundation for his expert opinion. However, this was not a court trial, and on summary judgment, all evidence must be taken in the light most favorable to the nonmoving party. *Luther v. City of Winner*, 2004 SD 1, ¶ 6, 674 N.W.2d 339, 343 ("We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party."). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (stating "at the summary judgment stage the judge's function is not himself to weigh the evidence and deter-

[¶ 17.] LaFave's own expert witness also concluded that the electrical arcing occurred over a number of months, not just on the date of the fire. On this point, Choudek testified as follows:

Q: Based on your expertise in this field [], did that arcing occur alone on May 8th of 2000?

A: No.

Q: And why not?

A: No. In my opinion and based on testing that I've done in other cases, this is prolonged—this is prolonged arcing. This type of damage does not occur in a matter of hours or days or even weeks. We're—we're talking this type of damage occurring over months and months and months.

Q: *And so that's something that preexisted prior to the reinstallation of the tubes by Mr. Ross on May 4th of 2000?*

A: *Yes.*

(emphasis added).

[¶ 18.] Choudek also testified that there was evidence of electrical arcing in other areas of the building where the wiring for the neon tubes passed through the metal soffit. In fact, one of the alleged NEC violations that Choudek identified involved the insulators/bushings that were used to prevent this type of arcing. In his report Choudek stated that "[t]he bushings *used for this pass through of the soffitt [sic] panel were sections of broken tubing, these broken tubes are not listed for this application.*" (emphasis in the original).

■ [¶ 19.] Ross asserts that even if LaFave's contentions that his reinstallation of the neon lighting did not comply

with the NEC are correct, there are genuine issues of material fact regarding whether Ross' work was the proximate cause of the fire. We agree. "Proximate or legal cause is a cause that produces a result in a natural and probable sequence *and without which the result would not have occurred.*" (emphasis added). *First Premier Bank v. Kolcraft Enterprises, Inc.,* 2004 SD 92, ¶ 62, 686 N.W.2d 430, 454.

[¶ 20.] Ross did not originally install the Hertz Motel's neon lighting system and there is no evidence that Ross performed any type of electrical work on the lighting system. He only performed removal, repair, and reinstallation of the neon tubing. While Ross was the last person to work on the neon tubing before the fire, Schmitz and LaFave both testified that on several occasions prior to the fire they had removed damaged neon tubes and later reinstalled the tubes themselves after being repaired. Furthermore, after Ross completed the reinstallation of the neon tubing on May 4, 2000, he turned the sign on to confirm that it would illuminate and he checked to make sure that it was not arcing. There is no evidence that LaFave experienced any problems with the neon lighting system until the fire occurred four days later.

[¶ 21.] Additionally, LaFave's own expert witness concluded there was evidence of electrical arcing occurring over a prolonged period of time and that inappropriate insulators/bushings were used. Schmitz also testified he was aware of the problem with electrical arcing a number of years before the fire occurred and that on

mine the truth of the matter but to determine whether there is a genuine issue for trial"); *Continental Grain Co. v. Heritage Bank,* 1996 SD 61, ¶ 16, 548 N.W.2d 507, 511 (stating

that the credibility of witnesses must be determined by the fact finder, not on summary judgment).

at least one occasion he attempted to correct the problem.

[¶ 22.] "Questions of proximate cause are for the jury in 'all but the rarest of cases.'" *Fritz*, 1997 SD 122, ¶ 17, 570 N.W.2d at 244 (quoting *Bauman v. Auch*, 539 N.W.2d 320, 325 (S.D.1995)). In viewing the evidence in the light most favorable to Ross, there are genuine issues of material fact whether Ross correctly reinstalled the neon tubes and whether his actions were the proximate cause of the fire. In addition, there appears to be a genuine issue of material fact as to where the fire originated. Therefore, the trial court erred in granting LaFave's Motion for Summary Judgment. We reverse and remand for trial.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 24.] MEIERHENRY, Justice, concurs in result.

MEIERHENRY, Justice (concurring in result).

[¶ 25.] I concur in result. Based upon the evidence presented to the trial court and viewing the evidence in the light most favorable to Ross, there is a genuine issue of material fact as to whether Ross correctly reinstalled the neon tubes. Ross testified that he did, other evidence indicated he did not. If it is proven that Ross incorrectly installed the tubes, there remains a genuine issue of material fact as to whether the incorrectly installed tubes proximately caused the fire.